## Modony *v.* Megdal, Appellant.

Argued April 1, 1935. Before Frazer, C. J., Simpson, Kephart, Maxey, Drew and Linn, JJ.

*Forest G. Moorhead,* of *Moorhead & Marshall,* with him *Edwin M. Wallover,* for appellant.

*Thompson Bradshaw,* of *May & Bradshaw,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 22, 1935:

Defendant appeals from a judgment in favor of plaintiff in an action for negligence. Appellant avers that plaintiff was guilty of contributory negligence as a matter of law, and hence asks us to decide only: (1) Whether or not the trial judge erred in refusing to affirm his, appellant's, point for binding instructions, and (2) Whether or not the court in banc erred in dismissing his, appellant's, motion for judgment non obstante veredicto.

Plaintiff was a carpenter engaged in carrying on his trade in the Borough of Midland, Beaver County, Pa. Defendant was a storekeeper, his store being located on Midland Avenue in the same borough. Defendant employed plaintiff to repair a porch or balcony forming part of the second story of the store. When plaintiff came there to arrange about doing the work, he found that paint would be needed in order to do it properly, and he so informed defendant, at the same time asking the latter if he, plaintiff, should purchase the paint when he went out to get necessary lumber. Defendant told him not to do so, as he, defendant, already had some paint, and asked plaintiff to come and see whether it was of the kind needed. While doing so, plaintiff stepped into an elevator shaft, and received the injuries of which complaint is made.

In the front of the store, defendant sold his stock of goods. From there to the back of the building, which included the greater part of its length, he stored the stock he had for sale, and at the rear end thereof, was located the elevator, into the shaft of which plaintiff fell. To reach this rear end from the front of the store it was necessary to pass down one of two narrow aisles, which were banked on either side with the stored stock of goods. They branched out at the back, the stock stored there being relatively less than at the sides of the aisles. The rear part of the store connected also with an adjoining garage, in which was located the paint plaintiff was to inspect.

Plaintiff testified that defendant passed through one of the aisles to the rear of the store, and, when he had done so, called to plaintiff: "Come on down and tell me what you want." Plaintiff's story of the subsequent events, from which the question at issue must be decided, is as follows: "Q. What did you say was the condition of that room? A. Well, when I went from the front it was light, but when I got walking down through the room I could not see anything. Q. In the back end of the building? A. In the back end of the building. And when I went in there I see just the door; you could tell there was an opening, just could tell there was an opening. Q. When you started to walk back to the back end of the building—A. From the front going back. Q. Yes, where were you going? A. Trying to find him. Q. You were going to respond to his call? A. Yes. . . . Q. How far back did you go? A. I cannot tell you exactly, but as soon as I saw the opening I thought to find him some place, and I called him 'Mr. Louie'— . . . Q. Did you walk back through this store? A. Yes. Q. How far back did you walk from where this boy was sitting [defendant's son who was in the front part of the store]; what distance did you walk back? A. About 100 feet. Q. You walked straight back, did you? A. Yes. Did you turn to the right or to the left as you got back there to the rear end of the store? A. No I go straight. . . . Q. And you walked back along there? A. Yes, underneath the balcony. Q. Now then, August, as you got near the rear of that aisle way that you were walking in, will you tell us what happened? A. When I got up that far, I could not tell you how many feet exactly from his son reading the newspaper; when I was down there I looked and it was dark, and I called him. Q. You tried to call whom? A. Mr. Louie [the defendant who had preceded him in walking down the aisle]. Q. What did you say? A. 'You help me.' I thought I called him at the same time, and then I fell. Q. Where did you fall? A. In the shaft. Q. What kind of a shaft was it? A. I

do not know, because I was never in the store before. Q. Was it an open hole, or elevator shaft, or what was it? A. It was a shaft, and I just put my foot down and went right over. . . . Q. Was there any gate or guard or ob- struction around that elevator? A. No sir; and no light: there might have been some chair, but you can fall any- how. . . . (Photograph shown witness, and he is asked) Q. Whether or not that is the elevator shaft that you fell through, as indicated on that picture. . . . A. I could not tell you; it was dark in there and I could not see nothing. . . . Q. *It was so dark that it was just black, and you could not see a thing; is that correct? It was so dark that it just looked like a big hole in the wall? A. Yes.* Q. You are sure of that? A. It was dark anyhow. . . . Q. Did you hear [defendant] call you more than once when he started to show you where the paint was? A. I heard him one time. Q. Just one time? A. Yes, sir. Q. And when you heard him his voice sounded to you as if he was way in back of the store? A. Yes. Q. And you did not call out and ask him, as I understood you, where he was until just as you fell in the shaft? A. That is all. Q. And you did not see any elevator gate, did you? A. No."

A witness for plaintiff said that at the point where plaintiff fell, the darkness, owing to goods stored there, was so dense "you could not see your hand in front of you." Still another witness for plaintiff said "and going towards the back of the store it seemed very dark to me; the farther you penetrated back to the back of the store the more the darkness increased."

The question we are called upon to decide is, there- fore: Was plaintiff guilty of contributory negligence in moving about in a place where it was so dark that he could not see anything, where he had never been before, and with which he was not familiar, instead of waiting until his call to defendant was answered, or retracing his steps along the aisle by which he had approached, and

which he knew, therefore, was a safe place to travel? We think he was contributorily negligent.

We do not find any opinion of this court based upon the exact facts here appearing, but the principle involved is clearly established in a number of them, to some of which we will now refer.

In Davis v. Edmondson, 261 Pa. 199, the judgment appealed from was entered in favor of defendant for want of a sufficient statement of claim. The court below said (on page 203) : "In the opinion of the court the 13th, 14th, 15th and 16th paragraphs of the plaintiff's statement clearly convict him of contributory negligence. He was employed as one of the musicians to play for the dance on the night of the accident; he had never previously attended any of the dances held in the room leased to Mrs. Jacobs; he did not know of the existence of the little three by six foot wooden platform erected across the private alley or passageway in the rear of the building. Some one other than the plaintiff, opened the door earlier in the evening on the night of the accident, and the plaintiff, a total stranger to the place and surroundings, walked out through the doorway in the darkness of the night on the little wooden platform and because he could not see the ends of the platform he stepped off and was injured . . . [Page 204.] The injury of which the plaintiff complains was so clearly the result of his own carelessness or negligence that he is not entitled to recover." For this exact reason we affirmed the judgment in favor of defendant.

In Murray v. Earl, 282 Pa. 517, where, also, plaintiff, because of the darkness of the location, fell into an elevator shaft, we said (page 520) "If it was so dark that he could not see, he had other means of ascertaining whether the elevator was there, as, for example, by stepping cautiously and feeling with his foot, as one naturally does when approaching a step in the dark, or by calling to his companions."

In Conboy v. Osage Tribe No. 113, 288 Pa. 193, plaintiff left a third-story lodge room intending to go home. When he reached the stairway he found it totally dark. "Reaching the head of the stairs, he took hold of the banister with his left hand, paused for a little while and called the janitor of the building four times for the purpose of having him turn on the lights, and getting no response, started down the stairs, and as he was making the third step missed his footing and fell down the stairway and over the banister, receiving the injuries for which damages are here sought. The trial judge on this showing entered a nonsuit on the ground of plaintiff's contributory negligence in testing the danger by endeavoring to traverse the stairs in the dark." We held (page 196) : "The court below properly disposed of the case by entering the nonsuit."

In Fordyce v. White Star Bus Lines, 304 Pa. 106, plaintiff was injured in stepping from a passenger bus. We said (page 111) : "According to her own testimony she knew the bus had stopped at a place, which, to her, was unusual—that knowledge should have caused her to be doubly cautious. As was the situation in Lerner v. Phila., 221 Pa. 294, 295, she chose to rely on her former experience, and abandoned the use of her natural senses for the time being. She blindly trusted a dangerous situation and was injured. As pointed out by the court below, 'the plaintiff having stepped down in the dark was in no different situation than she would have been had she stepped down with her eyes shut': Wilhelm v. Sunbury, etc., Ry. Co., 281 Pa. 69, 73." We, therefore, affirmed the judgment for defendant non obstante veredicto.

In Hoffner v. Bergdoll, 309 Pa. 558, plaintiff, being unable to enter an elevator at the usual place, passed into a dark part of the building, where there was then an available entrance, and, presuming, without any acquaintance with the situation, that it was safe so to do, and being unable to see whether it was or not, stepped through the entrance to the elevator, when the elevator

itself was not there, and was injured. We held that, in so doing, she was contributorily negligent, and we entered judgment for defendant non obstante veredicto.

In McVeagh v. Bass, 110 Pa. Superior Ct. 379, the syllabus, which accurately states the point decided, is as follows: "A customer, who is injured by falling down an open stairway in a storeroom, is guilty of contributory negligence, as a matter of law, where it appears that the room was pitch dark when she entered; that she had never been in it before and did not know its lay-out, and that notwithstanding the darkness she started to walk forward when she could not see the floor under her feet."

The judgment of the court below is reversed, and judgment is here entered for defendant non obstante veredicto.