## No. 33,456

SARAH C. MILLS, *Appellant,* v. THE CITY OF WICHITA, *Appellee.*

(73 P. 2d 1054)

Opinion filed December 11, 1937.

*Earl Blake, Harold Blake,* both of Wichita, and *Lawrence C. Mills,* of Chicago, Ill., for the appellant.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest V. McCalley,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for personal injury. Judgment was for defendant, sustaining a demurrer to the evidence of plaintiff. Plaintiff appeals.

The alleged injury occurred at the administration building at the municipal airport in Wichita. The petition first alleged the formal facts having to do with the creation of the airport. The petition then alleged that there was an administration building there, two stories high, and that all business of the airport was handled through this building; that at all times the defendant had invited the public to use this building, and had used it in the management of the airport, and that in this building were rest rooms and toilets and two courts or balconies and a large hall, to which the public was invited at all times. The petition then alleged that the floor of the large hall was of concrete or some similar substance, and was level except near the entrances to the balconies, where there were raised platforms; that these platforms were semicircular in shape and five and one half inches above the floor level; that the platform in question was 105 inches in width next to the door, and from the door to the farthest part was 48 inches; that there was a strip around the base of this platform of exactly the same kind of material, twelve and one-half inches wide, making it very difficult to determine the exact location of the step. The petition then alleged that it was the duty of defendant to keep the building sufficiently lighted so that persons passing to and from the balcony could avoid the danger of falling, and to construct and maintain it in a reasonably safe condition free from obscure steps; that it was the duty of defendant in the construction, maintenance and operation of the building to provide a reasonably safe construction to overcome differences in grade of floors; that a reasonably safe construction by providing gradients or inclined planes would have overcome the difficulty, and that it was the duty of defendant to use gradients or to provide lights at these steps.

The petition then alleged that on June 29, 1935, plaintiff was visiting at the administration building, and was on the second floor, and while she was walking from a balcony near the southwest corner of the second floor of the administration building she stepped from the balcony through the door onto the raised platform that has been spoken of, to a point where the step was located in a dark

place without sufficient light or other signal indicating the location of a stepoff; that plaintiff could not and did not see or know of the stepoff or that the floor of the room was lower than the balcony or platform; that as plaintiff was passing from the balcony into the room she unexpectedly, and without any warning, stepped upon the edge of the step and was thereby thrown with great force and violence onto the edge of the platform, and was injured. After describing the injuries suffered by plaintiff the petition then alleged that plaintiff was exercising due care for her own safety, and that her injuries were caused by the negligence of defendant in that it negligently constructed and maintained this dangerous step when it knew, or by the exercise of ordinary care should have known, that it was dangerous, in that defendant failed to light the step or platform so that persons passing over it could see the step, and that defendant failed to give the public using the room any signal, lights or warning that would enable users of the platform and door to learn of the existence of the dangerous trap created by the construction and maintenance of the room and floor as described.

After a general denial except as to allegations admitted, the answer admitted that defendant did operate a municipal airport and that it invited the public generally to come and visit, use and patronize a portion of the buildings and grounds of the airport, including a portion of the administration building, but the answer denied specifically that defendant invited the public generally or that it invited the plaintiff to go upon the steps and out upon the balcony, and alleged that the step where plaintiff alleged she fell was not open to public use, and if plaintiff went upon the step and through the door onto the balcony she was going where she was not invited and was a trespasser. The answer then admitted that the city did certain repair work for airplanes at the airport, but alleged that in the operation of the airport it was engaged in a governmental function and was not acting in its proprietary capacity. The answer further specifically denied that the floor where plaintiff was injured was not properly lighted or that the administration building was not properly built. The answer further alleged the building was built pursuant to plans and specifications prepared by a competent architect and that these plans were approved by the board of park commissioners of the city. The answer then alleged that it was necessary in the construction of the building with the balcony on the outside to construct a raised portion or step through the door-

way to prevent rainwater from coming into the inside of the building. The answer then alleged that the room was not improperly lighted and that the step leading to the doorway was plainly visible. The answer then alleged that if plaintiff fell, as she alleged, it had been necessary for her to step up upon the step to get out onto the balcony and pass through the door and step down off another step on the balcony and that in returning she was fully aware of the location of the step and the step was plainly visible. The answer charged contributory negligence on the part of plaintiff. The reply of plaintiff was first a general denial. The reply then alleged that if there was any part of the administration building used for private purposes no notice of it was at any time given to the public. It also reiterated the allegations of the petition as to negligence of defendant.

The first witness for plaintiff identified some pictures of the step in question. These pictures were shown to the jury and are attached to the abstract. They do little more than give a correct idea of the shape and height of this step and the proximity of windows to the step. The same witness testified concerning certain measurements of the step, about which there is little dispute.

The next witness was director for the board of park commissioners. He testified that one picture seemed to accentuate the height of one of the steps.

The next witness was the one who had identified the picture. He testified that the floor was made of terrazzo; that the floor was highly waxed; that there was a border of twelve and one half inches all around the raised platform on the floor level, of the very same material, and that the rest of the floor was checkerboarded in black and white squares. He then testified on cross-examination with reference to the pictures as to the light as it showed on them. The pictures themselves show one window quite close to the step in question and another window not very far away.

The next witness testified that he went to the airport with the plaintiff, who was his aunt; that in the party were also his wife's mother and his own mother; that they arrived at the airport about 7 or 7:15, June 29; that they stepped out on the balcony to look for the plane; that no guards or locks were on the door; that they were on the balcony about ten minutes and decided to return to the ground floor; that his aunt went first; next, his wife's mother, and then his mother, and he at the last; that he heard plaintiff cry out,

and when he got to her she was lying on the floor. He then testified as to her injuries, with which we are not interested on account of the conclusion reached. It will be noticed that this witness did not testify as to the way the building or the step was lighted.

The next witness was the sister of plaintiff. She testified that they went up on the front steps; that they went out onto the balcony; that it began to sprinkle, so they decided to return inside. When she saw her sister she was lying on the floor. It will be noted that this witness did not testify as to the step being lighted or not lighted. She did say the evening was rainy and cloudy. She did say, "I suppose she had forgotten the step." She said, too, on recross-examination that all of the party must have seen the step, because they went over it when they went out onto the balcony.

The next three witnesses were three architects, whose testimony will be set out in detail later on in this opinion.

Then there was some testimony about the extent of the injuries of plaintiff, but since the question we are considering is the liability of the city we are not concerned with that testimony.

The next witness was plaintiff. She testified about going out onto the balcony; that she came back to the door from the balcony and started into the room and then she fell; that she did not see any sign or indication that they should not go on the balcony. She testified, "I was walking along and I fell off of the step there and couldn't get up." She testified further that the day was cloudy and rainy and the lights were not on in the building at the airport. Her testimony will be noticed in more detail later on in this opinion.

There was some further testimony as to the extent of plaintiff's injuries.

The next testimony was on the question of whether the maintaining of the airport was a proprietary or governmental function of the city. In view of the conclusion we have reached as to the final outcome of the action it will not be necessary to set that testimony out in this opinion.

At the conclusion of plaintiff's evidence the defendant demurred to it on the ground that the operation of the airport was a governmental function; second, that the evidence showed it was a public building in the same condition it was when constructed, and therefore the evidence failed to show it was inherently unsafe, and that reasonable minds differ as to whether or not it was unsafe; third, that it showed that the plaintiff was either an invitee or a licensee upon

the premises and she was not entitled to recover upon the evidence offered on that account.

The court overruled the demurrer, and later on in the day sustained it. Judgment was given accordingly, and plaintiff appeals.

It will not be necessary for us to decide the interesting question as to whether or not maintaining the municipal airport was a governmental or proprietary function. We have concluded to base the decision upon the question of whether or not there is any liability on the part of the city even if it was maintaining this building in a proprietary capacity. The allegations of the petition make out a case of very bad negligence indeed, but recovery must depend upon whether or not those allegations are proven by the evidence. Whether the trial court was correct in sustaining the demurrer to the evidence must depend on whether there was any substantial evidence taken in the most favorable light to plaintiff to sustain the allegations of the petition. In the first place, we are unable to find any evidence that on this particular night the building was not properly lighted, other than the testimony of plaintiff that when the party arrived there at about 7:30 the lights were not on in the building. Nor can we find any evidence on the part of plaintiff that her fall was caused by her inability to see this step on account of bad lighting, since it is apparent she must have stepped up on the step or platform when she went out on the balcony a few minutes before she fell and stepped up on it from the balcony just a few seconds before she fell. All parties seem to understand, and there is no doubt every juror in Sedgwick county understood, that this was a new building and was in the same condition as far as safety is concerned that it was in when first built. The right of plaintiff to recover must depend upon whether or not the building was so inherently unsafe in the plan upon which it was constructed as to render the city liable.

A consideration of this question requires a critical examination of the testimony of the architects in connection with the testimony of what happened on the night of the accident. The first one testified that the particular part of the building was "hazardous." He explained this opinion by testifying that "A person walking through the doorway, if they contemplated a step, would contemplate a step as they stepped through the doorway and not after they had taken several steps." Another condition was that "the floor is very similar in color, and under certain lights it would look all alike and he would

be very apt to walk out and think that he was walking along the floor and step off." There is no evidence whatever as to the lights in this building and its effect on the step in question on the night of the accident. On this account the only testimony with which we are interested is the first statement set out above.

The next architect testified that in his opinion it was "dangerous construction." As reasons for having that opinion, he testified:

"My objection for that is that ordinarily coming out of a door of that kind you look for a step at the door, but when you walk out and you don't find a step and walk out four or five feet down here, you are not looking for a step, and this being the same color as the border, doesn't outline enough so you are very apt to step off there and not see the step."

It will be noted that this witness considered the distance of the step from the door as the really dangerous situation.

The next architect stated that in his opinion the situation was "hazardous." In explanation he testified:

"Q. Now, why do you reach that opinion? A. Well, the platform and the border around it being the same color, there is no distinctive, defining line between the two, between the platform and the border. The border is practically five inches below the platform and it is not observed readily at all.

"Q. Is there anything else that would cause you to reach that opinion? A. Well, unless it is the smoothness of the platform. It would be more hazardous in coming in from the outside, from the balcony, than if you were going in the opposite direction."

It will be noted that this witness did not include the distance the step was from the door as one of the elements that made the step dangerous.

Each of these witnesses testified on cross-examination that different minds might have reached different conclusions on this question.

The plaintiff testified, "I was walking along and I fell off of the step there." On cross-examination she testified as follows:

"Q. And came to the step that you had stepped up on to get out there five or ten minutes before? A. I suppose so.

"Q. And where were you looking when you got there? Were you looking where you were walking or looking around for the plane? A. No, I wasn't looking for the plane. I don't know just—I guess I was just walking along and not noticing especially.

"Q. You remembered having stepped up on that step and crossing that little raised platform when you came in, didn't you, when you went out? A. I suppose I did. I don't know.

"Q. Just sort of absentmindedly walked across there and stepped off? Is

that correct? A. Well, I walked across and fell, I suppose; I found out there was a step afterwards when I fell.

"Q. What happened? Did you step off of this step and then fall, or did you trip yourself? A. I stepped off, and when I found that there was nothing there, I tried so hard to catch myself before I fell."

We have then the question of whether the construction of a building with a step such as has been described here, considering the color of the step and floor and distance it was from the door, renders the city liable.

In the first place, we shall treat the matter as though plaintiff were an invitee of the city. Under such circumstances, what was the duty the city owed plaintiff? The duty owed plaintiff by the city was to exercise reasonable care to afford plaintiff a reasonably safe way to go out onto the balcony and return therefrom. (See 45 C. J. 823.) There is but very little dispute in the evidence in this case as to this step or as to what caused plaintiff to fall. She herself is the only witness on that point. She said she was "just walking along not noticing especially." There is no evidence that she would have been any better off if the step had been out in broad daylight. If plaintiff was not looking then she would have fallen, no matter what the light. In answer then to a question, "Did you step off of this step and then fall or did you trip yourself?" she said, "I stepped off, and when I found that there was nothing there I tried so hard to catch myself before I fell." This answer makes it plain that plaintiff fell because she was not looking. Did the city owe plaintiff a duty to so construct the building in question that she could walk about over it without looking where she was going?

In *Daniel v. Jackson Infirmary*, 173 Miss. 832, 163 So. 447, the court considered a case where an invitee to a hospital slipped and fell on some linoleum on the floor of a hallway. In considering the question of the liability of the hospital it was stated:

"Owner or person in control of building is not liable to invitee for injuries where construction and maintenance of building is substantially the same as that which has been in common and general use for long period of time in similar buildings, in absence of showing that such construction, maintenance, and use is so unreasonably unsafe that impartial persons could hardly be in disagreement upon that issue." (Headnote, ¶ 5.)

See, also, *Bruce v. Baer* (Mo.), 76 S. W. 2d 423. In *Bell v. Central Nat. Bank*, 28 App. D. C. 580, the court was considering a case where plaintiff fell on some steps. It appeared that one of these steps was only two inches in height, while the remaining steps were five inches

in height. The court held that the construction was reasonably safe under the circumstances and the owner of the building was not liable. The court followed the rule laid down in *Ware v. Evangelical Baptist &c. Society*, 181 Mass. 285, 63 N. E. 885. This was a case where the plaintiff fell while passing from one room to another, when the floor of one room was 4⅞ inches above the floor of the hallway. The court said:

"It is a matter of common observation that in entering and leaving stores, halls, railway-car stations and platforms, office buildings, and other buildings and places and private houses, adjoining surfaces are frequently at different levels, and the difference in level has to be overcome by one or more steps of greater or less height, or by some other device. The same thing happens in the interior of buildings and structures. We cannot think that such a construction is of itself defective or negligent. There is nothing in the nature of things which requires that a floor of a room which is entered from a hall or corridor, especially in a building like the Tremont Temple building, should be on the same level as that of the hall or corridor. Such may be the more usual or common construction, but there is nothing, we think, which requires it to be so at the peril of being regarded as defective or negligent, if it is not, and if suitable safeguards are not adopted to warn and protect those invited there." (p. 286.)

*Albachten v. The Golden Rule*, 135 Minn. 381, 160 N. W. 1012, was a case where two hallways intersected. One floor level was three inches higher than the other. When plaintiff was passing down the hall her foot came in contact with the raised floor, causing her to stumble. She brought her action for damages upon the theory that it was negligence for the owner of the building to maintain such a step; that is, that it was a dangerous step. The trial court directed a verdict for defendant. The supreme court said:

"We are clear that the presence of the step at the entrance of the intersecting hall was not, standing alone, sufficient upon which to predicate a charge of negligence on the part of defendant, or to require a submission of the issue to the jury." (p. 382.)

After a careful examination of the evidence in this case, and consideration of the authorities to which reference has been made, we have concluded that the step in question was not such a dangerous one as to make the city liable. The city in this instance furnished plaintiff a reasonably safe way of going out upon and coming back from the balcony. The demurrer of the defendant to the evidence of plaintiff was correctly sustained.

The judgment of the trial court is affirmed.