Hixenbaugh et vir., Appellants, *v.* J. G. McCrory Company.

Argued April 21, 1941.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and
KENWORTHEY, JJ.

*William C. Porter*, with him *Roy I. Carson*, of *Carson
& Porter*, for appellants.

*Rufus S. Marriner*, with him *John F. Wiley*, of *Marriner & Wiley*, for appellee.

OPINION BY BALDRIGE, J., July 1, 1941:

The plaintiffs brought this action of trespass to recover damages for personal injuries sustained by the wife plaintiff in falling as she stepped out of a door in departing from defendant's store. The trial judge entered a compulsory nonsuit on the ground that no negligence had been shown upon the part of the defendant and that Mrs. Hixenbaugh's own testimony disclosed that she was guilty of contributory negligence. The plaintiffs appeal from the refusal of the court below to take off the nonsuit.

Mrs. Hixenbaugh, accompanied by her husband, entered the defendant's store, which she had not previously visited, about 4:00 P. M. on October 14, 1937. The building, fronting on Fifth Street in Charleroi, has two entrance doors, each at a different level owing to the

grade of the street. To use either it is necessary to step up from the sidewalk and pass through a vestibule. The plaintiffs, in entering the store, used the upper vestibule, which is on a level with the storeroom floor.

Mrs. Hixenbaugh made certain purchases and with her left arm full of bundles approached the lower door to make her exit by an aisle or passageway about 6 feet wide between two counters. The store floor made of dark wood, slopes down toward a door 42 inches wide, the upper part of which is plate glass 29 inches in width. The lower portion, 11½ inches in height, is solid wood, which she stated prevented her from seeing an 8-inch step located immediately thereunder. The vestibule floor, which extends 11 feet from the sidewalk to the door, is constructed of glass blocks set in concrete and is considerably lighter in color than the wooden floor. The store was well lighted, but on that afternoon of a dark, misty day there were no lights in the vestibule nor in the show windows located on either side thereof, and no warning was given of the existence of a step.

Appellants base their claim on the defendant's negligence in failing to provide a safe, unconcealed step, furnish sufficient lights, and to give adequate notice of the step. While an owner of a store is not an insurer of the safety of customers, he owes them a duty to exercise reasonable care for their safety and is liable for an injury resulting from a breach of such duty: *Kulka v. Nemirovsky*, 314 Pa. 134, 139, 170 A. 261. A customer who enters a store, however, assumes all normal or ordinary risks and the owner is not liable for a danger which is obvious or should have been observed in the exercise of reasonable care: 45 C. J. §244, p. 837.

This is not a case where the injury was due to some obstruction or an unguarded opening in or near a passageway and therefore does not come within that line of cases of which *Polenske v. Lit Brothers*, 18 Pa. Superior Ct. 474, *Bloomer v. Snellenburg*, 221 Pa. 25, 69

A. 1124, obstructions in the aisles of stores; *Vetter v. Great Atlantic & Pacific Tea Company,* 322 Pa. 449, 185 A. 613, refuse deposited in a dark stairway; and *Christman et al. v. Segal,* 143 Pa. Superior Ct. 87, 17 A. 2d 676, an unguarded stairway in a store, are examples.

The learned court below in discussing the alleged negligence of defendant, aptly states: "As a practical proposition, at least in so far as our hilly southwestern Pennsylvania is concerned, to so hold would convict half the owners or tenants of bank buildings, office buildings, court houses, theatres, stores and other places of business, of negligence in the construction of their buildings. Few buildings of any size, nor even buildings of the most modern construction, are built without having entrances at different levels."

In *Haddon v. Snellenburg et al.,* 293 Pa. 333, 143 A. 8, a customer of the defendant store fell while walking along a balcony leading to a washroom, failing to observe a 6 inch step leading down to a lower level. The court there said: "It is not negligence per se or negligent construction in a store or other public place to have one floor at a lower level by a few inches than another."

In *Wessner v. Blue Ridge Transportation Company et al.,* 338 Pa. 161, 12 A. 2d 559, the wife plaintiff, during a stop of a bus at a terminal, entered a restroom. When leaving she pushed the door open and stepped forward without looking, in consequence of which she fell. The defendants were charged with negligent construction in that the platform was not extended beyond the door a sufficient distance to permit the occupant to step completely out before encountering a change of floor levels. Judge CARR, in a dissenting opinion which was adopted by the Supreme Court, in reversing the judgment entered by the court below stated that the construction complained of is the same as is generally used in many office buildings and department stores

and could not be regarded as unusual or dangerous. He held that the wife plaintiff's injury was due to thoughtless inattention to her surroundings, and careless assumption that the floor levels were the same.

The cases which we have examined and cite from other jurisdictions are not in entire accord. We concede the facts are not identical to those in this case, although they have similar features. The weight of outside authority is in harmony with the decisions of our courts in holding that difference in floor levels is not negligent construction. See *Ware v. Evangelical Baptist Benevolent & Missionary Society of Boston*, 181 Mass. 285, 63 N. E. 885; *Mills v. City of Wichita*, 146 Kan. 772, 73 P. 2d 1054; *Dickson v. Emporium Mercantile Co., Inc.*, 193 Minn. 629, 259 N. W. 375; *Bruce v. Baer*, (Mo.) 76 S. W. 2d 423; Contra: *Hanley v. James Butler, Inc.*, 167 N. Y. App. Div. 329, 153 N. Y. Supp. 39, 17 N. C. C. A. 306.

To find this defendant liable it was incumbent upon the plaintiffs to show that it failed to use ordinary care and prudence under the circumstances. There is an absence of proof that the defendant had any reason to believe that the normal use of the step in question involved an unreasonable risk to patrons. An owner of a store is not required to have his building in such a condition that no accident could possibly befall a customer either in entering or departing: *Mitchell et ux. v. George A. Sinn, Inc.*, 308 Pa. 1, 6, 161 A. 538.

The appellants further contend that the defendant was guilty of negligence in that the lighting was insufficient at the place the accident occurred. The evidence in support thereof is very meagre and in our judgment is inadequate to warrant a finding that this accident was due to the lack of proper illumination. According to Mrs. Hixenbaugh's own testimony after falling she had no trouble seeing the step. Assuming that the light was dim and deficient, she should not have proceeded

blindly forth in an unfamiliar place without exercising more care than she did: *Conboy v. Osage Tribe No. 113*, 288 Pa. 193, 135 A. 729; *Modony v. Megdal*, 318 Pa. 273, 178 A. 395; *McVeagh et al. v. Bass*, 110 Pa. Superior Ct. 379, 171 A. 486; *Fay v. 900 North 63d Street Corp.*, 137 Pa. Superior Ct. 496, 9 A. 2d 483. In our judgment the evidence did not establish defendant's failure to exercise reasonable care by providing a safe exit from its store.

If we would concede that defendant was guilty of negligence, we think that Mrs. Hixenbaugh, under her own testimony, was guilty of contributory negligence as a matter of law. She stated that she was looking ahead when she pushed open the door and "went out in a hurry." In explanation of her failure to look she said: ". . . . . . I didn't know the step was there." She testified further as follows:

"Q. Well, you had your eyes straight ahead of you?

"A. I was looking where I was walking. I had my eyes out in the vestibule, where I was going to go out."

\* \* \* \* \*

"Q. And you didn't look down to see if there was a step there or not, did you?

"A. I had my arms full, but I was looking down."

\* \* \* \* \*

"Q. But I say you didn't look at your feet?

"A. I didn't look at my feet; I looked right through the door."

\* \* \* \* \*

"Q. Then, you stepped out, taking it for granted that there wasn't any there, didn't you? You took it for granted as you pushed the door open that there wasn't any step there?

"A. Well, yes.

\* \* \* \* \*

"Q. . . . . . . If you had pushed it open and looked down at it, you could see that there was a step there?

"A.  I don't know whether I could or not.

"Q.  You didn't look to see?

"A.  I was looking out; I didn't look to see."

She did not testify that if she had looked she could not have seen the step. It thus clearly appears that Mrs. Hixenbaugh's vision was directed out through this door and not down to see where she was stepping.

In *Hellriegel v. Kaufmann & Baer Company*, 337 Pa. 149, 9 A. 2d 370, the plaintiff sustained an injury as the result of a fall which occurred as she was leaving the department store of defendant. She was directed by an employee of defendant to use the "employees' entrance," which it appears was at times used by customers. The exit generally used by patrons was closed owing to repairs being made after the flood in March 1936. The plaintiff testified that she had never gone out that way previously and that she was not thinking about, or looking for, a step, as she thought she was coming straight onto the sidewalk. The court there said: "Plaintiff must have been aware that she was leaving the store by an exit with which she was not familiar, and according to her testimony, it was in a dimly lighted portion of the building, yet she paid no attention whatsoever to her surroundings, to the movement of the people directly in her path, not once glancing down, nor exploring with a cautious foot the safety of her next step. Her own version of the accident conclusively shows that she substituted her past experience, in leaving the store by a doorway leading directly to the sidewalk, for the greater vigilance and care required by her use of an exit with which she was not familiar. Such lack of proper care convicts her of contributory negligence: *Fordyce v. White Star Bus Lines*, 304 Pa. 106."

So here, Mrs. Hixenbaugh should have been sufficiently prudent to pause long enough to observe where she was walking instead of heedlessly proceeding. She admitted that there were no persons coming in or going out to obstruct her vision.

In *Polenske v. Lit Brothers,* supra, we said: "For that which is usual or fairly to be anticipated, as a difference of levels in passing from floor to floor, or in entering from the street, the customer must be prepared."

In *Burckhalter et ux. v. F. W. Woolworth Company,* 340 Pa. 300, 16 A. 2d 716, the plaintiff met with an accident as she was leaving defendant's store by coming in contact with a scale standing in the vestibule. She testified that she was looking straight ahead at the crowd of people. The Supreme Court, in reversing the judgment obtained in the court below, said: "In short, when she stepped to the left, she did not look in the direction she was going, which caused her to strike the platform of the scale and fall." See, also, *Rogers v. Max Azen, Inc.,* 340 Pa. 328, 16 A. 2d 529.

The appellants lay much stress on the appearance created by the slope of the floor inside the door of the vestibule, contending that it created a situation that absolves Mrs. Hixenbaugh of negligence. The conditions that prevailed, however, did not relieve her of the legal duty of using her faculties to observe where she was walking and being attentive to her surroundings.

A majority of this court is of the opinion that this accident was the result of her own negligence.

Judgment of the court below is affirmed.

DISSENTING OPINION BY KENWORTHEY, J., July 17, 1941:

The lower court entered a nonsuit. I think the questions of negligence and contributory negligence should have been submitted to the jury.

The base of the glass door through which the plaintiff intended to leave the store was a wooden panel 11½" high. This panel obscured from her view an 8" step which was practically flush with the door when closed. As she approached the door, the floor of the store sloped downwards, and as she looked through the glass at the

floor of the vestibule, she said it looked to her as though it continued at the same level. It was a dark and misty day, there were bright lights in the store, there were no lights in the vestibule and she said she was "kind of blinded toward the outside." There was no "Step Down" or "Watch Your Step" sign on the door. The door opened outward and as she opened it her foot went down the step and she was thrown to the floor of the vestibule, sustaining the injuries for which suit was brought.

In a negligence case the function of the jury is not merely to find the underlying facts which constitute the "circumstances", but, in addition, implicit in the determination of the ultimate fact, negligence, is a finding by the jury of the appropriate rule of conduct for the particular circumstances found to have existed. And the power of the court is to set aside this finding only "when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law ...... could determine in [plaintiff's] favor the controlling issue involved: *Vergilio v. Walker,* 254 Pa. 241." *Jester v. Phila., Baltimore & Wash. R. R. Co.,* 267 Pa. 10 (1920).

I do not mean to say that a storekeeper who maintains a step between different levels in his store or at an exit to the street does so at his peril; nor that the failure to put a light in the vestibule was necessarily negligence by itself; nor that the construction of the door and step was necessarily faulty. What I do say is that where he places a step at an exit in such a way that it cannot be seen by a customer until she is immediately over it and adds to the deception by a glass door through which the floor on the other side may give the impression of being on the same level, *without taking the trouble to put a warning on the door,* a jury may reasonably find he has failed in his duty.

Nor do I think that cases such as *Conboy v. Osage*

*Tribe*, 113, 288 Pa. 193, 135 A. 729, are controlling on the question of contributory negligence. Plaintiff was not walking into pitch darkness. She could see the floor of the vestibule through the glass of the door from inside the store and she could see the step plainly *after* she fell. The semi-darkness caused by the absence of the lights in the vestibule and the dullness of the day, complemented by the brilliance of the lights in the store, simply prevented her from noticing the different levels. I think the case comes within the rule of *Rutherford v. Academy of Music*, 87 Pa. Superior Ct. 355, and the cases which follow it, and that the apparent conflict between the plaintiff's testimony quoted in the majority opinion and her statement, "I could not see because there were no lights outside and the bright lights on the inside kind of blinded me towards the outside", and that, as she looked out of the door, "The floor just looked to me like it sloped right out on the street", was for the jury, particularly in view of the fact that the burden of proving contributory negligence was on the defendant. *Giannone v. Real*, 333 Pa. 21; *Sopherstein v. Burtels*, 178 Pa. 401.

And finally, although it is not controlling, *Hanley v. James Butler, Inc.*, 153 N. Y. S. 39 (App. Div. N. Y. (1915) ), is almost identical on its facts and the case was held properly submitted to the jury, the court saying: "This, if not obviously faulty construction, constituting a trap, at least raised a question in that regard for the consideration of the jury."

Judge HIRT joins in this dissent.