Gallagher, Appellant, *v.* Furman et al.

Argued March 1, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Francis D. Mahon,* for appellant.

*James W. Scanlon,* for appellees.

Opinion by Keller, P. J., April 16, 1943:

Action of trespass for personal injuries received by plaintiff as a result of a fall in defendants' building. Verdict for plaintiff. Judgment non obstante veredicto entered for defendants. Plaintiff appeals.

The facts viewed in the light most favorable to plaintiff are as follows:

Defendants are the owners of a building located on the south side of West Market Street, Scranton, Pa., numbered 113. They use the first floor of the building, except the space required for a passage and stairway to the second floor, as a store. At the east end of the building is the entrance to the hallway or passage leading to the second floor, which is used by Dr. A. Wartell for his dental offices. The doorway to this entrance is seven feet three inches high and three feet wide. It has a clear glass panel five feet high by twenty-six inches wide which begins about two feet from the bottom of the door. On the day of the accident the inside of this glass panel was covered with a cream colored or ecru mesh lace curtain, and in the center of the panel between the glass and the curtain, there hung a metal sign twelve inches by fourteen inches, with the words, $\begin{matrix} \text{Dr. A. Wartell,} \\ \text{DENTIST} \end{matrix}$ on it. Immediately above the door there was a stationary transom with a single pane of clear window glass thirty-two inches wide and fourteen inches high; and just above this transom there was a large fixed single pane of clear window glass twenty-eight and one-half inches wide and twenty-nine inches high, both of which had no curtains and let in some light on the entry and the stairs to the second floor. The second floor of the building extended out over the door and transoms, northward, about four feet four inches, and a glass bulk or display window of defendants' store extended the same distance into the sidewalk; but the drug store on the east of the building was even with the entrance door.

The door opens inward, on a level with the street, into an entry way three feet ten inches long and three feet six inches wide—with three inches on each side of the doorway. The entry way was covered with linoleum, of a pattern resembling alternate black and white tiles. Three feet ten inches from the doorway there was a single step up, leading to a platform or landing from which the stairway led up to the second floor. This step had a riser seven and one-half inches high, which was painted or varnished a dark brown color; and the edge or nose of the platform was protected, just above the riser, by a brass or copper metal strip commonly called a 'nosing'. The platform or landing was four feet long and forty-two inches wide and was covered with the same pattern of linoleum as the entry way— alternate black and white tiles. The risers of the stairway steps, which led in a straight line up from the end of this platform or landing were all painted dark brown, the same color as the riser of the step from the entry way to the platform, and every step had a brass or copper strip or nosing protecting the edge or nose of the tread, similar to that at the beginning of the platform.

There was an electric light fixture just over the entry way, but it was not lighted during the daytime.

Plaintiff had been in defendants' store, but he had never been in the hallway or passage to the second floor.

At 2:00 to 2:30 o'clock of the afternoon of December 7, 1938, the plaintiff opened the door leading to the second floor of defendants' building for the purpose of delivering to Dr. Wartell a couple of prescriptions that the druggist next door—111 West Market Street—had filled for him. Plaintiff had offered to deliver them as an act of courtesy for his friend the druggist, but, for the purposes of this case he must be treated as an invitee. He said he did not open the door to its full width, but entered sideways and, when he was in, the

door closed by reason of a self-closing spring device. It was a dull, dark, winter day, but he said he saw the steps leading up to the second floor, and could see "very well" the black and white linoleum covering the floor of the entry way and of the platform, and also saw the brown space between, with the metal strip above it, but he thought the entry way and the platform were on the same level and that the brown colored riser, with the brass or copper metal strip, was a strip of bare floor between the two pieces of black and white linoleum. In going forward he tripped over the step and fell breaking both bones of his wrist. It was then, he said, that he noticed that the dark brown wood with the brass or metal strip above it was the riser of a step leading from the entry way to the platform at the foot of the stairway, rather than a part of the floor.

It was not alleged that there was any defect in the maintenance of the floor, or the linoleum, or the riser, or the metal strip or nosing. They were all in good condition. The grounds of plaintiff's action were that the defendants were guilty of negligence: (1) In failing to give notice or warning of the existence of the step or riser between the levels of the entry way and platform respectively; (2) in failing to have the entry way lighted or illuminated; (3) in having the riser or step and the floor of the entry way the same color, so as to deceive plaintiff; (4) in having any step or riser between the entry way and the platform or landing leading to the stairway to the second floor. The third ground is directly contrary to the testimony and need not be discussed. The floor of the entry way, as well as that of the platform or landing was of a strikingly different color from the riser of the step. The latter was dark brown, with a metal strip or nosing at the top, while both linoleum floors were of alternate black and white tile pattern. The plaintiff admitted that he saw the difference, but assumed that it was a strip of bare floor between two pieces of linoleum. The contour of the

ground there is hilly and there was nothing inherently dangerous in placing a step in the corridor or passageway about midway between the entry way and the platform or landing, rather than extending the entry or corridor on one level so as to have all the steps together. In the absence of inherent danger, that was a matter to be decided by the owner and builder. The plaintiff knew he was in a hallway or entry, for the purpose of going from the first floor to the second floor, and was obliged to be on the lookout for ascending steps. "For that which is usual or fairly to be anticipated, as a difference of levels in passing from floor to floor, or in entering from the street, the customer must be prepared." *Polenske v. Lit Bros.*, 18 Pa. Superior Ct. 474, 476. See also, *Haddon v. Snellenburg*, 293 Pa. 333, 336, 143 A. 8.

Nor do we think there was sufficient evidence of defendants' negligence in the other matters relied on to allow the case to go to the jury. A lace curtain over the large glass panel in the door is not ground for a charge of negligence in circumstances like the present, where in addition to whatever translucence there might be through the curtained door there were over and above it two clear window glass transoms with a combined area of 1274½ square inches or 8 85/100 square feet, which shed light enough for the plaintiff to see the stairway, the metal strips on its treads, the linoleum on the floors and the dark brown riser of the first step, of the same color as the risers of the stairway steps. The widely different colors between the linoleum floors on the one hand and the riser, with its metal strip, on the other, was the best possible notice of the existence of the step or riser between the entry way and the platform or landing, and of the change of level, if the plaintiff had been watchful and vigilant.

Furthermore, in opening the door (seven feet three inches by three feet) to get into the entry way, addi-

tional light came from the outside into the entry way, from which plaintiff could have seen the step and riser if he had been looking, as he should have been. The door took up all of the entry width but six inches, and left only three inches of the entry to the west of the doorway when it was opened. The chart or plan in the margin[1] drawn to scale, shows that in order to get past the door, so as to allow it to close, it had to be open wide enough for him to see the step up to the platform or landing if he had looked. He had no right to assume that it was a piece of bare board between two pieces of linoleum. It was only seventeen to twenty-two inches[1] away, and must have been seen by him if he had looked as he should have done.

---

[1]

SCALE: ½" = 1'

Plaintiff could scarcely squeeze through an opening of only one foot between door and wall  More probably the door was open so as to be fifteen inches or eighteen inches distant from the wall. The distance from the door to the step, if the door was open eighteen inches from the wall, would be seventeen inches. If open fifteen inches from the wall, the distance to the step would be nineteen inches. If open only twelve inches from the wall, the distance to the step would be twenty-two inches.

The court below entered judgment non obstante vere-
dicto in favor of the defendants on two grounds: (1)
That there was not sufficient evidence of defendants'
negligence to go to the, jury; and (2) that plaintiff's
own testimony convicted him of contributory negligence.
We are in full accord with the learned court below
on both grounds.

The case in our opinion is governed by the decisions
of this court and the Supreme Court in *Hixenbaugh v.
McCrory Co.*, 145 Pa. Superior Ct. 586, 20 A. 2d 910;
*Hellriegel v. Kaufmann & Baer Co.*, 337 Pa. 149, 9 A.
2d 370; *Wessner v. Blue Ridge Transportation Co.*,
338 Pa. 161, 12 A. 2d 559; *Burckhalter v. Woolworth
Co.*, 340 Pa. 300, 16 A. 2d 716; *Rogers v. Max Azen,
Inc.*, 340 Pa. 328, 16 A. 2d 529; *Strawhacker v. S. F.
Whitman & Son, Inc.*, 147 Pa. Superior Ct. 33, 36, 23
A. 2d 349. In fact this plaintiff's case is not as strong
as the respective plaintiffs' were in those cases. In the
*Hixenbaugh* case, a customer leaving the defendant's
store was unaware that there was a step down, out-
side the door she was opening—the glass panel at the
bottom of the door not being sufficiently large to dis-
close it; and thinking it opened on the level, she fell
and hurt herself. In the *Hellriegel* case, the plaintiff
had been *directed* to leave the defendant's store by a
dimly lighted 'employee's exit'—with which she was
not familiar—that descended by three *platforms,* one
of which had a 'winder' tread, before she would arrive
at the street level, and she fell at the 'winder' tread of
the second platform (p. 151). In the *Wessner* case,
plaintiff used a toilet compartment in the defendant's
rest room that was built on a platform six inches higher
than the main floor of the room and fell in leaving it
(p. 162). In *Rogers v. Max Azen, Inc.,* supra, the plain-
tiff, who wanted to buy a coat, had been *directed* by
the defendant's clerk to take the stairway to the second
floor and turn to the right at the top of the stairs,

and in doing so she tripped over the end of a *half-inch base* by which the banister was anchored to the floor. In *Burckhalter v. Woolworth Co.,* supra, the plaintiff fell over the platform of a large platform scales, which the manager of defendant's store had a *few minutes before* moved into the vestibule of the store. Any question of liability for *shadows* is eliminated by the decision in *Mammana v. Easton Nat. Bank,* 338 Pa. 225, 12 A. 2d 918, which disapproved our ruling in *Berrien v. Phila. R. T. Co.,* 133 Pa. Superior Ct. 481, 3 A. 2d 18.

In the present case, the plaintiff knew that the door which he opened led to the second floor; that there would be steps to go up; and on his opening the door there was ample notice to him of a change of floor level in the greatly different colors between the black and white tile pattern of the linoleum floor and the dark brown color of the riser, with the brass or copper strip or nosing at the top—which should have made him careful of his progress in the passage way or corridor.

The assignments of error are overruled and the judgment is affirmed.