**EAST TEXAS THEATRES, Inc., v. SWINK.**

No. 6035.

Court of Civil Appeals of Texas. Texarkana.

April 15, 1943.

Rehearing Denied July 1, 1943.

Shook & Shook, of Dallas, and Norman, Stone & Norman, of Jacksonville, for appellant.

Guinn & Guinn, of Rusk, and Frank Devereux, Jr., of Dallas, for appellee.

WILLIAMS, Justice.

H. T. Swink, plaintiff below, was awarded recovery for injuries suffered from a fall into an orchestra pit, a part of the stage of the Palace Theater, which was owned and operated by appellant, East Texas Theatres, Inc., defendant below. The jury found as to primary negligence: (1) That defendant failed to provide adequate light; (2) failed to warn plaintiff of the pit prior to his fall; (3) maintained the orchestra pit without having a guard to prevent persons walking upon the stage from falling into it; and (4) "defendant conducted plaintiff upon the stage at a place where it would be necessary for plaintiff to go around the opening in the floor in order for plaintiff to reach the piano with safety to himself." Each of above was found to be negligence and a proximate cause of the fall of plaintiff.

In response to issue No. 14, the jury found that defendant, its agent and employees, "knew of the existence of the pit or opening in the floor of the stage." Each of the following issues were answered in the affirmative:

No. 15: "Do you find from a preponderance of the evidence that Billy Fallin, employee of the defendant, knew of the position of H. T. Swink, plaintiff, just prior to the time H. T. Swink fell into the pit or opening in the stage floor, realized that H. T. Swink was in a dangerous position by reason of said pit or opening in the floor, and failed to advise H. T. Swink of the existence of said pit or opening in the floor of the stage?"

No. 16: "Do you find from a preponderance of the evidence that the failure of Billy Fallin to advise H. T. Swink, plaintiff, of the existence of the pit and of the existence of the dangerous position of H. T. Swink, if you have so found, was negligence?"

No. 17: "Do you find from a preponderance of the evidence that the failure of Billy Fallin to advise H. T. Swink, plaintiff, of the existence of the pit and of the existence of dangerous position of H. T. Swink, if you have so found, was a proximate cause of the fall of H. T. Swink?"

No. 23: "Do you find from a preponderance of the evidence that the Plaintiff, H. T. Swink, in jumping on the runway and attempting to cross to the stage before the rear door of the theater was opened was an act which a person of ordinary prudence, in the exercise of ordinary care, would not have done under the same or similar circumstances at the time?"

No. 24: "Do you find from a preponderance of the evidence that the Plaintiff, H. T. Swink, in jumping on the runway and attempting to cross to the stage before the rear door of the theater was opened, if you have so found, was a proximate cause of the fall of the plaintiff, H. T. Swink?"

Defendant's formal motion for judgment was denied. Plaintiff's formal motion for judgment was granted, and judgment for $5,000 entered, the jury having assessed the damages in this sum.

The findings of contributory negligence, if supported in the evidence, in response to issues Nos. 23 and 24, entitled defendant to judgment, unless issues Nos. 15, 16 and 17 submitted the theory of discovered peril and the evidence supported the affirmative findings thereon. Morgan & Bros. v. Missouri, K. & T. R. Co., 108 Tex. 331, 193 S.W. 134; Montgomery v. Houston Electric Co., 135 Tex. 538, 144 S.W.2d 251, 252; 38 Am. Jur. (Negligence), Sec. 217. Under various points and counter-points it is asserted: (1) That issues Nos. 15, 16 and 17 submitted ordinary negligence and did not submit the theory of discovered peril; (2) that the evidence as a matter of law will not support the finding of negligence under the theory of discovered peril; and (3) that the evidence as a matter of law was insufficient to support the jury findings on contributory negligence.

Swink, owner and operator of several trucks engaged in the transfer business, was hired by Lon Morris College to remove and haul a piano from the stage of the theater to the college. The college owned the piano. When Swink called at the office of the theater and informed Mr. Tanner, its manager, of his mission, the latter replied: "All right." Billy Fallin, an employee of the theater, age about twenty, who was standing near the office, was instructed by the manager to "go up on the stage and turn on the stage lights and open the back

stage doors and aid him." "I told Mr. Swink he could drive his truck to the back entrance and the boy would open the door. Mr. Swink said, 'If it's all right, I will just go through,' and I said, 'O. K.'"

Fallin and Swink then proceeded down the right aisle (west side) to the rear, site of the stage. Fallin was in the lead. Swink testified: "Me and the boy (Fallin) then come to the stage; I could feel the stage; Fallin said, 'We have to jump up,' and he jumped up. It was pretty high up and I said, 'Is that the only way to get up?' He said, 'Can't you jump up there?' I said, 'Yes,' and I thought I would follow in his tracks but I didn't. After I jumped up on the stage I didn't go very far. I started to go, and fell in there. It was dark as night but I knew he was there. When we first started down the aisle I asked Fallin if the lights could be turned on. He said, 'We can make it all right.' I knew the door had to be opened from the inside. It was a large door and I knew when the door was opened it would let in light. It did not occur to me that a door was going to be opened and I could wait until it was opened. Fallin gave me no warning to look out for the pit. I didn't know one was there. I could not see the stage very well."

Fallin testified that he went back to the stage rather fast—almost running, hopped upon the runway of the stage and continued on to the rear of the stage, eight or ten feet, to unfasten the rear door; and that he was either at this door or nearly there when he heard Mr. Swink say, "Do I have to do that?" The aisles of the theater were carpeted. Fallin testified that he did not know Mr. Swink was in the theater until he heard above remark, having last seen Mr. Swink with his head in the office window. Q. "You heard Mr. Swink when he said, 'Do I have to do that?' when you jumped upon the runway?" A. "Yes. I didn't turn around and answer his question. I was nearly to the door. I didn't tell him to be careful that he might fall in the pit or to wait until I opened the door. I didn't see him jump on top of the runway, I knew at that time he was following me. Didn't occur to me that he would get upon the stage and run right into the pit." The only stairway in the auditorium led from the left aisle into an anteroom and on the stage. Plaintiff and Fallin are the only witnesses who testified with respect to what occurred at the stage.

Without controversy the theater was dark at the time, especially on the stage. It was about 10:30 a.m. The theater had not been opened up that day for a show. A switch installed near the stage controlled the lights on the stage. No lights were on or were turned on. No natural light through any opening reached the stage. The double door at the rear of the stage if and when opened to permit the removal of a piano to a truck in the alley would have furnished light upon the stage. It had not been opened at the time plaintiff fell. The piano was situated to the rear of the stage. The orchestra pit, 6x20 ft. and about 4½ or 5 ft. in depth, is situated on the front of the stage. A runway 2½ or 3 ft. wide extended around the four sides of the pit. The pit was not covered over or equipped with guard rails. Its top was flush with the runway and the stage. The pit, built years before for an orchestra, had never been used for such purpose in the theater's showing of motion pictures.

In Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, 118, it is stated and fully discussed that the issues necessary to be submitted and obtain affirmative findings thereto in order to sustain a recovery for negligence on the discovered peril doctrine are: "(1) that the plaintiff was in a position of peril; (2) the actual discovery by the person who inflicted the injury of the perilous position of the plaintiff in time to have averted injury to him by the use of the means at hand; [and] (3) the failure thereafter to exercise ordinary care in the use of the means at hand." Northern Texas Traction Co. v. Weed, Tex.Com. App., 300 S.W. 41.

It is thought that special issues Nos. 15, 16 and 17, when construed with respect to above restatement of the law, is not subject to the criticism that they do not submit negligence under the discovered peril doctrine. Special issue No. 15 inquires if plaintiff was in a position of danger (peril) just prior to the time he fell in the pit; if defendant knew and realized (actual discovery) that plaintiff was in such danger at the time; and if he failed to warn plaintiff of such imminent danger. The jury was instructed, if they answered No. 15 in the affirmative, to answer No. 16, and if the latter were answered "Yes", to answer No. 17. It is thought that issues Nos. 16 and 17 when construed with No. 15, and the testi-

mony upon which same were based, sufficiently embraces the time element as discussed in Turner v. Texas Co., supra, namely, the discovery of the perilous position in time to have averted injury to plaintiff by the use of the means at hand. Defendant's only exceptions to issues Nos. 15, 16 and 17 complained that the submission of such issues was upon the weight of the evidence, which is not urged here; and that there was no legal and competent evidence to justify their submission.

■ It is appellant's position that the doctrine of discovered peril cannot arise except in connection with animate or moving objects or things which bring about the injury and which are set in motion by the person so charged. We have been unable to find a decided case where discovered peril has been the basis of recovery in a negligence case involving a structural hazard not connected with an injury resulting from machinery, automobile, trains or other moving things wherein the so-called dangerous instrumentality was an animate or moving thing. We fail to see the logic or reason to limit the application of negligence under the discovered peril doctrine only to the instrumentalities and under the conditions here urged by appellant.

In the case of the operator of a train or automobile, who discovers the perilous position of a person in time to avert the injury by the use of the means at hand, the further element under the doctrine of discovered peril is met by proof that the operator after such discovery failed to exercise ordinary care in the use of the means at hand to avert injury, namely, the failure to sound a whistle, a bell or a horn, and such failure was a proximate cause of the injury. The instant case involves the alleged failure of the employee to timely give a vocal warning after his alleged discovery of plaintiff's perilous position.

■ If the pit was uncovered and unguarded and had been kept in such condition during the months of Fallin's employment on the premises, if the stage was in darkness at the time, and if this employee had guided plaintiff to the edge of the stage within a step or two of such hidden danger, we would not be in a position to disturb the jury's finding that this employee knew and realized that Swink was then in a dangerous position. If thereafter this employee suggested to plaintiff to make the jump as he, the employee, was doing or had just done, and caused plaintiff to proceed on in an attempt to follow the employee without giving plaintiff warning of such danger, then such attendant facts and circumstances were for the jury to weigh in determining if defendant's employee had discovered plaintiff's perilous position in time to have averted the injury by the use of the means at hand. "Discarding all adverse evidence and giving credit to all evidence favorable to plaintiff and indulging every legitimate conclusion favorable to the plaintiff that might have been drawn from the facts proved," 17 T.J. (Evidence) Sec. 410, we feel unwarranted in disturbing the affirmative findings to issues Nos. 15, 16 and 17.

■ We are not in accord with appellee's position that the evidence as a matter of law was insufficient to support the jury's findings (Nos. 23 and 24) on contributory negligence. Under all the attendant facts and circumstances in this record, a fact issue was presented, whether plaintiff was guilty of contributory negligence "in moving about in a place where it was so dark that he could not see anything, where he had never been before, and with which he was not familiar." Modony v. Megdal, 318 Pa. 273, 178 A. 395, 396, and cases there cited.

■ The damages awarded, although rather liberal for the injuries suffered, presented a fact issue for the jury's determination.

In view of the conclusion herein reached, we pretermit a discussion of the matters presented under points 11 to 14, inclusive. All other points have been considered and are respectfully overruled.

The judgment is affirmed.

HALL, Justice (dissenting on motion for rehearing).

If it be assumed that the facts set out in the original opinion raised the issue of discovered peril, which I seriously doubt, it is my opinion that special issues Nos. 15, 16 and 17 set out did not submit the issue of discovered peril to the jury, in that the element of time, a crucial issue under the doctrine of discovered peril, is not embraced in said issues as worded.

In Northern Tex. Traction Co. v. Weed, Tex.Com.App., 300 S.W. 41, 44, it is stated: "The vital and controlling issue in every case of discovered peril is whether the perilous position of the injured party is

discovered in time to avoid the injury by the use of all the means at hand. In nearly all cases of injury there is a discovery of the danger at some point prior to the injury, and the crucial issue is the time of discovery." See also Northern Tex. Traction Co. v. Singer, Tex.Civ.App., 34 S.W. 2d 920, 923. In Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, 115, which cites above holding and others, it is reannounced "that the time of discovery is the crucial issue in discovered peril cases and that an issue presenting the element of time must be directly submitted."

In the instant case, the issue as to whether Billy Fallin, employee of defendant, discovered the perilous position of H. T. Swink in time to have prevented his fall into the pit by the use of all the means at hand, was never directly submitted to the jury by any special issue in the charge.

For the reasons above stated, I do not concur in the disposition of this case reached in the majority opinion. It is my opinion that the motion for rehearing should be granted and the cause reversed and remanded.