## MEHR v. G. C. MURPHY CO., Inc.

### No. 22106.

District Court, N. D. Ohio, E. D.

. May 16, 1945.

Edmund Peters, of Salem, Ohio, and Pelton & Wilson, of Cleveland, Ohio, for plaintiff.

Lynch Day, Pontius & Lynch, of Canton, Ohio (Robert M. Rybolt, of Canton, Ohio, of counsel), for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. Plaintiff, Mrs. Mary Mehr, a resident and citizen of North Canton, Ohio, filed this complaint in the Columbiana County Common Pleas Court against the G. C. Murphy Company, Inc., a Pennsylvania corporation, claiming damages of $10,000 for injuries resulting from a fall in a vestibule of defendant's general retail store in Salem, Ohio, which fall plaintiff attributed to defendant's negligence, particularized as failure to properly light the vestibule and failure to warn customers of a change in grade between the vestibule and the adjoining sidewalk. Defendant removed the case to this court, where it was tried without a jury. At the close of plaintiff's case, defendant moved for a verdict in its favor.

2. Plaintiff entered defendant's store through the main State Street entrance at about 8 p. m. on November 28, 1942. At about 8:15 p. m. she fell and received serious injuries while leaving the store through a Lundy Street exit. At the time in question, it was dark outside and the weather was clear. The store was brilliantly lighted inside with 200 watt lights set at ten-foot intervals in the ceiling, the closest to the

Lundy Street door being 5 feet away. Two swinging doors, with clear glass panes 30 inches by five feet in size, led from the store into this Lundy Street vestibule. This vestibule was about 5 square feet in area, paved with white terrazo decorated with a red border on the four sides. The top of the doorway consisted of a clear glass transom, about 2 feet by 5 feet in size. Light from the inside of the store shone into and lighted this vestibule through the doors and the transom. Bordering the entranceway on the north was a show window, about 5 feet by 10 feet in area, having a clear glass window about 5 feet wide and 10 feet high facing the vestibule and a clear glass window about 10 feet square facing Lundy Street. This show window rested on a grey marble base about 1 foot high. A 1 foot valance hung from the top of the windows. This display window was brilliantly lighted from the ceiling with 100 watt bulbs extending along the vestibule and Lundy Street and two 150 watt bulbs in the center of the window, fitted with reflectors to diffuse the light and prevent shadows. The light from this show window shone into and lighted the vestibule. Along the north side of the vestibule an open stairway led upwards in a northerly direction to business offices, and a light hanging from the stairway ceiling above the second step from the vestibule was lighted.

3. Lundy Street has a down-grade extending from the north to the south, and at the point of the vestibule the Lundy Street sidewalk is 5 inches higher than the floor of the vestibule, making a 5 inch step-up from the vestibule to the sidewalk. There is also a down-grade extending from west to east along the State Street side of the store, which makes the sidewalk at the State Street entrances about 5 inches lower than the State Street vestibules, with a 5 inch step-down from those vestibules to the sidewalk.

4. Plaintiff has been familiar with the Lundy and State Street grades and has been a customer of defendant's store for some 25 years. She testified that she had never before used this Lundy Street exit and did not know that there was a step-up from it to the sidewalk, that there were several people standing in the vestibule at the time of the accident, that the vestibule was too dark for her to see the step, that there was nothing to indicate the step, that she was looking straight ahead as she proceeded into and across this vestibule and that she did not see the step until she tripped over it.

5. From witnesses called by plaintiff and from photographs of the locus, her charges of lack of light and lack of indication of the step-up were conclusively disproved, and I am forced to find that the vestibule and step-up were plainly visible and such that a reasonably prudent person would be likely to expect or see the step, that the vestibule and step-up were sufficiently well lighted at the time in question so that a person exercising reasonable observation and care for his own safety could have and should have seen the step and safely walked upon it, and that the step was in no way a trap or hidden danger of which the defendant was required to give special warning. The vestibule and step-up were in a reasonably safe condition, and plaintiff failed to sustain her charges of negligence.

6. In addition to failing to prove any negligence on the part of defendant, plaintiff's proof shows that her failure to see and avoid the step in question resulted proximately from her failure to see and observe a step which was plainly visible. Plaintiff's injuries resulted proximately from her lack of reasonable care for her own safety.

## Conclusions of Law.

1. This is a suit of a civil nature between citizens of different states involving more than $3,000, removed to this court from an Ohio State Court by a non-resident defendant, over which this court has jurisdiction. 28 U.S.C.A. §§ 41(1) and 71; Siegel v. City of Detroit, D.C.1943, 52 F. Supp. 669.

2. Where, as here, a customer fails to prove that injuries received in a fall in a store resulted proximately from the storekeeper's negligence, the storekeeper is not liable for such injuries. Sec. 343, Restatement of Torts; S. S. Kresge Co. v. Fader, 1927, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132; Boyle v. Preketes, 1933, 262 Mich. 629, 247 N.W. 763.

3. Where, as here, it appears that a customer's fall in a store resulted from her own negligence, the storekeeper is not legally responsible for injuries received thereby. Flury v. Central Pub. House, etc., 1928, 118 Ohio St. 154, 160 N.E. 679; Boyle v. Preketes, supra; Picman v. Higbee Co., 1935, 54 Ohio App. 55, 6 N.E.2d

21; Mills v. City of Wichita, 1937, 146 Kan. 772, 73 P.2d 1054; Goodman v. Theatre Parking, Inc., 1938, 286 Mich. 80, 281 N.W. 545; Elliott v. Dahl, 1941, 299 Mich. 380, 300 N.W. 132.

4. Accordingly, judgment of no cause of action is being entered at the close of plaintiff's case in chief.