Bremer *v.* W. W. Smith, Inc., Appellant.

Argued October 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas J. Clary,* with him *Richard A. Smith* and *Louis Wagner,* for appellant.

*H. Horace Dawson,* for appellee.

OPINION BY CUNNINGHAM, J., April 15, 1937:

Plaintiff recovered a verdict for $400, as damages for injuries she sustained through stepping into a hole, alleged to have been negligently permitted to exist in the floor of a parking lot, or open air garage, operated by the defendant. Following the denial of its motion for judgment n. o. v. and the entering of judgment upon the verdict, defendant appealed.

The question here involved is whether there was evidence from which, if believed, a jury could reasonably find appellant guilty of negligence, and particularly whether there was sufficient evidence to sustain a finding that appellant had constructive notice of the existence of the hole.

At the conclusion of the testimony by and on behalf of appellee, counsel for appellant submitted a point for binding instructions and rested. These facts appear from the testimony of appellee and her escort, Dr. Paul F. Bremer.

On December 23, 1933, at about nine o'clock in the evening, a clear, cold night, Dr. Bremer, with the appellee, who was then Ruth Tarte, as a passenger in his car, drove into the parking lot of W. W. Smith, Inc., appellant, which is located on the southwest corner of Seventeenth and Market Streets in the City of Philadelphia. When the car stopped the appellee alighted therefrom and as she did so stepped into a hole about four inches in depth, four inches in width, and of unspecified length in the cinder floor of the parking lot. As a result she twisted her ankle, fell down, and sustained injuries to her legs which incapacitated her for a period of about three months. There was no light in the parking lot on the side of the car from which the appellee alighted. Upon the question of constructive notice, appellee testified the hole "just looked like as though many cars had passed over it." Dr. Bremer described it as being of a depth of about four inches with its outer edges "sort of smoothed down by the tracks of other machines going over it." The appellee testified she looked before stepping off the car but did not see the hole.

There was no evidence of actual notice to appellant or any of its employees of the existence of the hole. Upon the question of constructive notice the trial judge charged: "You will determine, if she was careful, whether there was a hole at this open-air parking plot, and you will determine from the testimony which you have heard, from the description of this surface of this hole, of its depth, of its general appearance, of the wheel tracks over it from automobiles, whether or not that hole had been there for such a length of time as to bring home notice to the garage man, the owner and proprietor, the defendant in this case, that the hole was there."

Our inquiry, therefore, is whether the evidence, when read in the light most favorable to the appellee, justi-

fied the refusal of appellant's point and the submission of the question of constructive notice to the jury. Clearly, the doctrine of res ipsa loquitur is not applicable to this case and appellee did not rely upon it. She endeavored to show the hole had been there long enough to give appellant constructive notice of the defect in the floor of its garage. The only evidence submitted, however, upon this branch of the case was, as above indicated, that the hole looked "as though many cars had passed over it" and its edges were "sort of smoothed down by the tracks of other machines going over it." We are not convinced this testimony was sufficient to take the case to the jury.

Appellee came upon the premises controlled by appellant at its invitation. Appellant was not an insurer of the safety of its invitee, but it was its duty to maintain its premises in a reasonably safe condition in view of the contemplated use thereof and the purposes for which the invitation had been extended. As applied to this case, the measure of its duty was to keep the surface of its lot in such condition that its patrons would not be exposed to danger in entering or leaving the parking space, or in alighting from their cars. There was no suggestion that appellant had any actual knowledge of the existence of the hole or depression which caused appellee's fall. So far as the description of the defect given by appellee and her witness is concerned, it may have been caused by the spinning of the rear wheels of an automobile. But regardless of its cause, appelleee had the burden of showing circumstances from which appellant could reasonably be charged with constructive notice of its presence.

What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case. Some of the factors affecting the question, in addition to the time elapsing

between the origin of the defect and the accident, are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it: *Langley v. F. W. Woolworth Co.*, 47 R. I. 165, 131 A. 194.

The applicable rule is thus stated in 45 Corpus Juris, page 837, Section 245: "In order to impose liability for injury to an invitee by reason of the dangerous condition of the premises the condition must have been known to the owner or occupant or have existed for such time that it was the duty of the owner or occupant to know of it."

The Restatement of the Law of Torts, under the title "Special Liability of Possessors of Land to Business Visitors" sets up under Section 343 the following standard of care: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them ......"

In the case at bar there is not the slightest evidence of the length of time during which the alleged defect was permitted to exist, or of its probable cause. The description of the size of the lot is meager—merely that it is about one hundred feet in length on Seventeenth Street and about the same depth on Market. With reference to the location of the hole, the only evidence is that of Dr. Bremer who stated he drove in from Market Street and stopped near the booth where the checks were issued. This testimony would tend to minimize the effect of his other statement that the hole

had the appearance of having been passed over by a number of cars. Many cars would probably cross this portion of the lot in a short period of time.

It is common knowledge that a floor of the kind described in the evidence is necessarily more uneven than the usual wood or composition floor in a store or enclosed building. When the nature of appellant's business is taken into consideration, it would seem that the measure of his duty should not be as high as that of the operator of a store or theatre; at least it can rise no higher.

Time is always an important factor in the problem of constructive notice, and we think the general principles announced in store cases are applicable here. Upon consideration of the record, our conclusion is that this case falls within the line of cases in which the evidence has been held insufficient to justify the submission of the question of constructive notice to the jury.

*Minton v. McCreery and Company,* 96 Pa. Superior Ct. 431, is an example of the type of cases to which we refer. There, the plaintiff's fall was caused by slipping on a small stream of some greasy substance which extended two or three feet from a pivot on which a revolving door operated. The trial court submitted to the jury the question whether the grease had been there long enough for the defendant, through its agents and employees, to have discovered it. In reversing the judgment for the plaintiff this court said: "This was asking them to find something without having any testimony before them on the subject. It is true that the plaintiff stated that the oil was a small stream which 'extended from the pole,' but she later said that the oil was not in motion. She was evidently describing the space covered by the oil and not the source. There was no proof that the swinging doors were such a contrivance as required oiling, nor, if they did, as to who

oiled them and how long before the time when it is claimed plaintiff was injured they were oiled."

Another illustration is *Bell v. Great A. & P. Tea Co.,* 288 Pa. 160, 135 A. 607, where plaintiff slipped on snow and ice on the steps of defendant's store at 11 o'clock a. m., it having snowed the previous night. The court held that plaintiff must show that the condition of the steps had existed for some time prior to the happening of the accident and for such a length of time that the defendant should have had notice and knowledge of the condition.

The question of constructive notice has also arisen frequently in actions against property owners based upon injuries suffered by pedestrians through the presence of defects in sidewalks. Ordinarily, pedestrians are not business invitees and the measure of the duty of such property owners is not as high as that of this appellant. Such cases, however, cast some light upon the question with which we are now concerned. Reference may be made to *Vendig v. Union League of Philadelphia et al.,* 291 Pa. 536, 140 A. 503, where the plaintiff was injured by stepping upon a defectively placed lid of a coalhole located in the footway of a street adjoining the property of the defendant. The hole had been used during the afternoon and plaintiff was injured about six o'clock in the evening. Our Supreme Court held the evidence insufficient to enable a jury to decide that the defect had existed long enough to charge the property owner with constructive notice. In *Beck v. Germantown Cricket Club,* 228 Pa. 173, 77 A. 448, the plaintiff was injured through stepping in a hole in a board sidewalk. There, as here, "the cause and manner of the break, and the length of time it had existed before the accident, were purely matters of conjecture" and the judgment for the plaintiff was reversed.

For the reasons stated we think the evidence in this

case was not sufficient to justify the trial judge in submitting the question of constructive notice to the jury. Appellant's point for binding instructions should have been affirmed or its subsequent motion for judgment n. o. v. granted.

Judgment reversed and here entered for the defendant.