Angelelli, Appellant, *v.* Albert J. Mansmann Company.

Argued November 16, 1950. Before Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ. (Rhodes, P. J., absent).

*Francis A. Muracca,* with him *Frank J. Zappala,* for appellants.

*Wallace E. Edgecombe,* with him *John H. Sorg,* for appellee.

OPINION BY ROSS, J., January 12, 1951:

This action in trespass was brought by husband and wife for damages for personal injuries sustained by the wife-plaintiff, while a customer in defendant's department store, from a fall down stairs leading from the second to the first floors. The verdict of the jury, awarding husband and wife $200 and $800 respectively, was set aside by the granting of defendant's motion for judgment n.o.v., and the plaintiffs have appealed.

The primary issue upon which liability depends is the question of constructive notice, and it was upon the determination of the court below that there had been no constructive notice to defendant that it granted judgment n.o.v.

On June 19 or 20, 1946, the wife-plaintiff (hereinafter referred to as the plaintiff) ascended the stairs of defendant's store from the first to the second floors. Questioned as to whether she had observed any defective condition of the stairs at that time she replied that

she "just didn't notice anything, going up the steps". As she descended the same stairs, she was carrying three parcels: a three-pound package of lunch meat, a dozen oranges and cover-alls which she had purchased on the second floor of defendant's store. In her testimony she described events immediately subsequent as follows: "I had both arms filled with packages, and as I was coming down when I got to about three steps before the platform I got my foot caught in the stripping, the front part of my foot, the toe; and when I got my foot caught in the stripping, the lower part of my shoe, I lost my balance and fell forward, trying to hold my bundles, and falling, it seemed like my foot went down, it seemed like the step wasn't there. The step was low and slanted to the left. That was what threw me over and I went all the way down the stairs. Q. You say you stepped on a stripping. How do you know that fact? A. I felt it, when I got my foot caught." She testified further that after she fell she landed on the first floor and "hit the corner of one of the tables . . . nearby the stairway", was helped to her feet and otherwise assisted by employes of defendant, that the superintendent was called, that she did not return to inspect the stairs to see what had caused her to fall, but because of embarrassment she "just wanted to rush out of the store", and that she left for home within five or ten minutes, walking out without any assistance.

The plaintiff-husband, "three or four days" later, went to defendant's store for the purpose of inspecting the stairs "to see the defect, how she fell", and tested them by placing his foot down heavily on them. He testified that he found the linoleum on the stairs "awful humpy; it was uneven in spots, and it would sink down when stepped on". He "noticed the stripping was above the linoleum in many places on the steps . . . [The linoleum] wasn't firmly fastened to the floor or the steps . . . when you stepped on it, it went down." On

cross-examination, in answer to the question, "You observed the stripping was elevated in places, and that stripping, you don't know whether it was on this particular step or not, do you?" he answered, "That particular step, I don't know."

The plaintiff went back to the stairs about a month later. She testified that she "noticed going up those steps the steps are squeaky and sort of tilted to one side, to the left. Coming down, the stripping was ragged and sticking up on the edges," She attributed the squeaking to the "congoleum on the steps . . . It was awfully worn, not torn, in spots, sort of lumpy. Whenever you put your foot down on the step you could feel your foot going down in, where people walked"; and that the edging did not cover the congoleum.

The *Restatement of Torts*, section 343, incorporated into the decisional law of Pennsylvania, holds that "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them . . ." The following quotation from *Bremer v. W. W. Smith, Inc.*, 126 Pa. Superior Ct. 408, 411, 191 A. 395, states substantially the broad principles of constructive notice in Pennsylvania: "Appellee came upon the premises controlled by appellant at its invitation. Appellant was not an insurer of the safety of its invitee, but it was its duty to maintain its premises in a reasonably safe condition in view of the contemplated use thereof and the purposes for which the invitation had been extended . . . . The measure of its duty was to keep the surface of its lot in such condition that its patrons would not be exposed to danger in entering or leaving . . . or in alighting from their cars. There was no suggestion that appellant had any actual knowledge of

the existence of the hole or depression which caused appellee's fall . . . . But regardless of its cause, appellee had the burden of showing circumstances from which appellant could reasonably be charged with constructive notice of its presence."

The plaintiff here was an invitee on defendant's premises. The burden is, however, upon her to prove that her injury was caused by a defective condition on the premises of which defendant either knew "or by the exercise of reasonable care" could have discovered. She does not plead actual notice but relies on constructive notice, and must consequently show that the looseness of the stripping on the stairs, which she alleges as the cause of her injury, had existed for a sufficient time to charge defendant with notice of its existence.

Before she can plead constructive notice to defendant, plaintiff must establish the premise on which it is founded: that there was a defective condition on the stairs which caused her to sustain injuries. Plaintiff herself did not examine the steps until about a month after the accident, and her husband inspected them three or four days after the accident. Accepting her version as to the condition of the stairs a month later—that they were "squeaky" and the stripping loose—as true in every detail, it does not follow that such condition existed *on the day of the accident* and caused her fall.

The mere happening of an accident does not charge a defendant with liability; res ipsa loquitur has no application. It was for plaintiff to prove some specific default or, at least, an inference of negligence as an indispensable basis of recovery. *Chapman v. Clothier,* 274 Pa. 394, 118 A. 356; *Reay v. Montgomery-Ward & Co., Inc.,* 154 Pa. Superior Ct. 119, 35 A. 2d 558; *Markman v. Fred P. Bell Stores Co.,* 285 Pa. 378, 132 A. 178.

In *Smith v. American Stores Co.,* 156 Pa. Superior Ct. 375, 40 A. 2d 696, this Court, speaking through Judge HIRT, stated at page 378: "In general, in an action arising from personal injury, the burden is on the plaintiff to prove the negligence of the defendant which caused it. And cases involving injury to an invitee of a storekeeper are no exception to the rule; res ipsa loquitur does not apply. This often is a heavy burden on a plaintiff even in a meritorious case. Cf. MacDonald v. Gimbel Brothers, Inc., 321 Pa. 25, 183 A. 804. And although under some circumstances the difficulties of proof of negligence may be insurmountable, yet the rule has not been relaxed. A storekeeper is not liable except upon proof of the negligence of his servant or employee, chargeable to him, or of a dangerous condition of which he has had actual or constructive notice. His duty rises no higher than to keep his store in a reasonably safe condition and to remove hazards of which he has actual knowledge or which have continued long enough to charge him with constructive notice of their existence. (citing cases)." See also *Kramer v. Meyer,* 168 Pa. Superior Ct. 13, 76 A. 2d 481, and *De-Clerico v. Gimbel Brothers, Inc.,* 160 Pa. Superior Ct. 197, 50 A. 2d 716.

The learned trial judge, in his charge to the jury, recognized the fact that "ordinarily the law is that the plaintiff would have to show how long that condition existed" and explained that he allowed this case to go to the jury "without such evidence, on the theory that this was a structural defect of such description that it . . . might have been foreseeable". He added, significantly, "It is very possible that somebody walking around carelessly a few minutes before kicked up this stripping and they would have no chance to know it before the accident occurred. It might have been torn up voluntarily by somebody."

Appellant relies on *Fisher v. Pomeroy's, Inc.*, 322 Pa. 389, 185 A. 296, wherein recovery was allowed to plaintiff-customer who caught her heel in the corrugations of a metal step and fell on the stairway of defendant department store's stairway. Evidence was admitted which showed that there had been previous falls on those stairs, sufficient to put defendant on notice of the existence of a dangerous condition, and this evidence bore considerable weight toward imputing constructive notice to defendant. That factor is entirely absent in the instant case.

Appellant also cites *Oberheim v. Pa. Sports & Enterprises, Inc.*, 358 Pa. 62, 55 A. 2d 766, in which defendant was held to have had timely notice of a dangerous condition of its premises. The wife-plaintiff, a skater and an invitee on defendant's premises, descended a ramp leading from the dressing room down to a platform which abutted the entranceway to the rink. There was a handrailing along the end of the platform, but hockey equipment had been left leaning against it so that it could not be used for support by those entering or leaving the areaway. After skirting the hockey equipment, and as she stepped down from the platform to the entranceway, plaintiff's skate caught in a pocket of ice, causing her to fall. The ridge of ice had been formed by the freezing of ice scrapings which, mixed with dirt, paper and cigarette butts, had been pushed there by attendants when the ice of the rink had been cleaned. There was further testimony that at the particular time of plaintiff's fall the lighting was poor, and it was conceded that the full lighting capacity of the arena had not been turned on. The Supreme Court held that the irregular ice pocket in the entranceway was a likely and foreseeable result of the manner in which the rink and passageway were being maintained to the knowledge of the defendant, or at least of its responsible employes, and affirmed plaintiffs' verdicts.

The *Oberheim* case is clearly distinguishable from the present one. Here there is no evidence of reduced lighting nor that any foreign substance on the floor, left there through the negligence of defendant's employes, caused plaintiff to fall. Here there was nothing to prevent plaintiff from grasping the hand-railing and averting the fall, had she chosen to do so, rather than, as she testified "trying to hold my bundles". There is an ever present duty imposed on all persons to look where they are going and to avoid the danger by use of the means at hand. *Ward v. Horn & Hardart Baking Co.*, 163 Pa. Superior Ct. 422, 62 A. 2d 97. The means at hand available to this plaintiff were substantial handrails of proper height on both sides of the wooden stairway. *Milburn v. Knights of Columbus Home Association*, 167 Pa. Superior Ct. 509, 76 A. 2d 466. On cross-examination, in answer to the question, ". . . if it had happened your toe hit the stripping . . . and you had been holding on the hand-rail, you would have been able to catch yourself?" she replied, "Yes."

In *Bremer v. W. W. Smith, Inc.*, supra, 126 Pa. Superior Ct. 408, 191 A. 395, cited by appellant, judgment n.o.v. was granted to defendant-operator of a parking lot, on the ground that it had had no constructive notice of the existence of a hole in the floor of its parking lot, into which plaintiff stepped as she alighted from a car being parked there, and fell, sustaining injuries. The only evidence submitted on this issue was that the hole looked "as though many cars had passed over it" and its edges were "sort of smoothed down by the tracks of other machines going over it." This testimony was held insufficient to take the case to the jury. The accident there in question occurred at night, and it is not in evidence that the plaintiff was familiar with the surroundings. Plaintiff in the instant case testified that she had shopped in defendant's store periodically "two or three times a month" for "about

five or six years" preceding the accident. Ordinarily she used the elevator, and in fact, had to pass the elevator on the second floor in order to reach the stairway, but that fact is immaterial since she, of course, was not bound to use the elevator.

In our opinion, the statement of Judge BALDRIGE in *Hixenbaugh v. McCrory Co.*, 145 Pa. Superior Ct. 586, 20 A. 2d 910, 21 A. 2d 242, at page 590, is peculiarly applicable to the situation presented by this case: "To find this defendant liable it was incumbent upon the plaintiffs to show that it failed to use ordinary care and prudence under the circumstances. There is an absence of proof that the defendant had any reason to believe that the normal use of the step in question involved an unreasonable risk to patrons. An owner of a store is not required to have his building in such a condition that no accident could possibly befall a customer either in entering or departing: Mitchell et ux. v. George A. Sinn, Inc., 308 Pa. 1, 6, 161 A. 538."

We are convinced that the burden of showing such a defect in the stairs as reasonable inspection ought to have disclosed prior to the accident has not been sustained by the plaintiffs, and that the court below properly granted judgment n.o.v. for defendant on the basis of lack of proof of constructive notice.

Judgment affirmed.