## D'Aprile v. Rolling Hill Hospital

*Peter C. Gardner,* for plaintiff.
*Amalia V. Romanowicz,* for defendant.

LAWRENCE, *J.,* November 28, 1995—Plaintiffs Karen and John D'Aprile commenced the above-captioned action, seeking money damages for personal injuries allegedly sustained as a result of Mrs. D'Aprile's fall at Rolling Hill Hospital in Elkins Park, Pennsylvania. The facts of the case are not in dispute. On June 12, 1990, Mrs. D'Aprile was at the hospital awaiting the birth of her nephew. At approximately 7:15 p.m. that evening, as she made her way from the family

waiting room to the corridor telephones, she slipped and fell near the security desk at which security guard Michael Eves was sitting. Although he did not see her fall, he found her on the floor and immediately assisted her.

The apparent cause of the fall was a small puddle of clear liquid on the floor, which she described as a "water-like" substance. She had not seen any substance on the floor before she fell. At her request, Mr. Eves made an incident report.

Mr. Eves was stationed at the security desk on the maternity/OB-GYN floor during visiting hours of 7 p.m. to 8 p.m. His principal duties were to monitor the visitors to the nursery and to ensure general security on the floor. He stated that he arrived at the security desk that night at five minutes before 7 p.m.; prior to that time he was on rounds throughout the hospital.

During the 20 minutes from his arrival at his post to the time Mrs. D'Aprile fell, he did not see any liquid or other foreign substance on the floor, he did not observe anyone spill anything and he did not see any maintenance of the floor area. Nor did he see anyone walk down the corridor where she fell. He could not recall specifically if he left his post during the 20 minute period but he knew that several times during the hour he walked from the OB-GYN section into the maternity ward. He never saw any puddle at any time prior to attending to Mrs. D'Aprile.

Plaintiffs allege that the hospital was negligent for permitting the substance to exist and for failing to warn of this condition. The hospital denied all allegations of negligence and has instantly moved for summary judgment. Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, together with any affidavits and admissions on file show

that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *McConnaughey v. Building Components Inc.,* 536 Pa. 95, 637 A.2d 1331 (1994).

The parties agree that the duty which the owner of property such as a hospital owes to its invitees is set forth in Restatement (Second) of Torts §343, which provides as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(A) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(B) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(C) fails to exercise reasonable care to protect them against the danger." As stated in *Moultrey v. Great A & P Tea Co.,* 281 Pa. Super. 525, 529-30, 422 A.2d 593, 595-96 (1980),

"The principle of law from which this rule of the Restatement was derived is that a possessor of land is not an insurer of the safety of those on his premises. . . . As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. . . . Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular from his duty of reasonable

care under the existing circumstances. Logically, the invitees' case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care ought to have known, of the existence of the harm-causing condition." (citations omitted)

Pennsylvania courts have held that if a harmful transitory condition is created by the possessor of land or those under his authority, then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm. *Myers v. Penn Traffic Company*, 414 Pa. Super. 181, 606 A.2d 926 (1992), *allocatur denied*, 533 Pa. 625, 620 A.2d 491 (1993). If the condition is one which the owner knows has frequently recurred, then actual notice of the condition may properly be found. *Id.* However, if the transitory condition is traceable to persons other than those for whom the owner is ordinarily accountable, there must be actual notice or constructive notice that the condition existed for such a length of time that in the exercise of reasonable care it should have been discovered. *Id.*

In the instant case, there is no evidence that defendant either created or had actual notice of the condition which caused plaintiff to slip and fall prior to the occurrence. There is no evidence that the condition was one which the hospital knew frequently recurred.[1] Plaintiffs must therefore proceed on a constructive notice theory in this case.

---

1. Although plaintiffs emphasize Mr. Eves' prior knowledge of puddles existing in the hospital, having testified that he had "cleaned up a lot of puddles in his three years at the hospital," there was no evidence upon which a trier of fact could conclude that puddles frequently occurred in *this* location or under what circumstances they existed.

Plaintiffs argue that constructive notice can be reasonably inferred from evidence that the condition existed for a sufficient length of time to have been discoverable by the exercise of reasonable diligence. The length of time required to fasten constructive notice of a dangerous condition on the owner of premises open to the public fluctuates according to the nature of the establishment and the need for inspection. *Davanti v. Hummell,* 409 Pa. 28, 185 A.2d 554 (1962).

"What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case. Some of the factors affecting the question, in addition to the time elapsing between the origin of the defect and the accident, are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and *the* opportunity which defendant, as a reasonably prudent person, had to remedy it." *Id.* at 32-33, 185 A.2d at 556, citing *Bremer v. W.W. Smith Inc.,* 126 Pa. Super. 408, 411, 191 A. 395, 397 (1937).

There was no testimony or any evidence as to how the substance came to be on the floor. The only evidence plaintiff has produced indicating the length of time that the liquid was on the floor was based on Mr. Eves' testimony that he had passed the area approximately 20 minutes before her fall and had not seen any foreign substance on the floor. The inference plaintiffs wish the court to draw, *i.e.,* that 20 minutes is sufficient to establish constructive notice, is not reasonable under the circumstances.

Here, the puddle was small, clear in color and against a light-colored tile or linoleum floor. The substance

was virtually invisible. Although a hospital corridor during visiting hours is normally a place traveled by invitees, the low level of activity in the corridor on this particular evening did not lead Mr. Eves to anticipate any problems of this nature. There was no evidence that the liquid had been tracked to any area away from the immediate area of the accident. The absence of tracking from the area of a spill is evidence that the spill is one of recent origin. *Lanni v. Pennsylvania Railroad Co.,* 371 Pa. 106, 88 A.2d 887 (1952).

A lack of reasonable care is not established merely because Mr. Eves was at the security desk about 10 feet away when she fell. Defendant produced evidence that the guard monitored the area for unsafe conditions before coming to his desk and that he walked around the ward and did not see the substance. As stated by the court in *Harclerode v. G.C. Murphy Co. Inc.,* 207 Pa. Super. 400, 404, 217 A.2d 778, 780 (1966), "if the condition was not so obviously dangerous as to have come to the attention of plaintiff it was not so obvious as to come to the attention of the manager as he passed it." In sum, the court believes that the liquid was not on the floor for such a period of time that the hospital, in the exercise of reasonable care, should have known of it.

Plaintiffs also argue that a prima facie case of negligence against the hospital was made out under section 344 of the Restatement (Second) of Torts. This section imposes liability upon a possessor of land for the negligent acts of third persons under circumstances identified in the rule as follows:

"Section 344. Business premises open to public: Acts of third persons or animals

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability

to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

"(A) discover that such acts are being done or are likely to be done, or

"(B) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Plaintiffs argue that comment (f) of this section applies.

"(F) Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

Given the lack of evidence that the hospital had failed to take precautions to eliminate and detect foreign substances on its floor [2] (there being no proof of policies

2. The sole evidence in this regard was that for 20 minutes there was no mopping of the area. This does not constitute a lack of reasonable care.

or procedures in place at the hospital on June 12, 1990 relative to safety and cleanup which the hospital failed to abide by), as well as a lack of evidence of the hospital's awareness that water had regularly collected in this part of the corridor so as to require a large staff to frequently attend to it to keep it clear, this theory does not apply to this case.

Because the court finds that the condition of the floor does not support an inference of negligence on the part of the hospital, entry of summary judgment in favor of the hospital was warranted. The court respectfully requests that its order be affirmed and the appeal dismissed.

(Appealed to the Superior Court on October 10, 1995.)