J-A02033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHAWN SEMSICK, AS EXECUTOR OF THE ESTATE OF MARTHA BARLETTA | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| JONATHAN TODD GOOD AND PAULA L. GOOD | : : : | No. 504 WDA 2022 |
| v. | : : : : | |
| DON HUEY CUSTOM BUILDING AND REMODELING, INC., BASTIAN HOMES, INC. AND BASTIAN HOMES, LTD. | : : : : : : : | |
| APPEAL OF: SHAWN SEMSICK | : | |

Appeal from the Order Entered April 4, 2022
In the Court of Common Pleas of Indiana County
Civil Division at No. 12013-CD-2018

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                     **FILED: FEBRUARY 22, 2023**

Shawn Semsick (Appellant) is the executor of the Estate of his deceased aunt, Martha Barletta (Ms. Barletta or Decedent).  Appellant challenges the trial court's grant of summary judgment in favor of two defendants in the underlying negligence and survival action: Don Huey Custom Building and

_____

* Retired Senior Judge assigned to the Superior Court.

Remodeling, Inc. (Don Huey), and Jonathan Todd Good and Paula L. Good

(Mrs. Good) (collectively, the Goods).[1]  After careful review, we affirm.

The trial court summarized the underlying facts as follows:

This matter arises out of an incident that occurred on or about December 7, 2016, at the home of [the Goods].  [Ms.] Barletta had been an employee of the Goods for approximately ten (10) years, performing cleaning services in the Goods' home. On December 7, 2016, Ms. Barletta and homeowner, [Mrs.] Good, were talking in the dining room of the Goods' home.  Mrs. Good picked up some Christmas presents from the dining room table to take upstairs to be wrapped.  Ms. Barletta also picked up a few items and they then carried those items up the "back staircase" [("the staircase," "the stairway," or "the stairs")] to a room in the Goods' home described as their office.  Ms. Barletta and Mrs. Good placed the gifts on the floor in the office.  Ms. Barletta then turned around and started down the stairs.  Mrs. Good was following behind her.  Ms. Barletta, while holding on to the railing with her right hand, turned around and was speaking to Mrs. Good, and for some unknown reason, Ms. Barletta fell down the stairs.  The fall resulted in Ms. Barletta landing on her head, causing her to sustain fractures in her jaw and neck, along with bruises and contusions. Ms. Barletta passed away [approximately two years later] from an unrelated medical issue on December 17, 2018.  After the accident, Ms. Barletta was unable to recall any portion of the incident.  [Mrs.] Good was the only witness to the accident.

The Goods' home was originally built in 1996[, by Bastian Homes, Inc., and/or Bastian Homes, Ltd. (collectively, Bastian)]. The Goods were not involved in the design or construction of the home.  The Goods purchased the home in 1998 from the builder, who had been residing in the home with his family.  Shortly after the Goods purchased the home, they hired Don Huey to modify the entry at the top of the back staircase.  Don Huey did not initially install the stairs and performed no work on the section of stairs where Ms. Barletta fell.  With the exception of the work

_____

[1] As we discuss *infra*, this appeal is proper because the trial court entered an order granting Appellant's petition for finality pursuant to Pa.R.A.P. 341(c) (trial court "may enter a final order … upon an express determination that an immediate appeal would facilitate resolution of the entire case.").

performed to the entry area, and new carpet, the Goods have never done any work to modify the layout of the stairway, or any of the stairs.

Trial Court Opinion, 3/3/22, at 4.

The trial court also recounted the procedural history:

On March 26, 2019, [Appellant] filed a complaint against the Goods[, Bastian,] and Don Huey … asserting the following counts: Count 1 negligence — survival action against the Goods; Count 2 negligence — survival action against Don Huey; Count 3 negligence — survival action against Bastian []; Count 4 professional negligence — survival action against Don Huey; and Count 5 professional negligence — survival action against Bastian []. On April 15, 2019, the Goods filed an answer, new matter, and cross claim in response to [Appellant's] complaint, asserting that if it is determined that the Goods are liable to [Appellant], then Don Huey and Bastian [] are solely liable to [Appellant,] or liable to the Goods for purposes of contribution and/or indemnification. On May 16, 2019, [Appellant] filed a reply to the Goods' new matter.

Don Huey filed an answer, new matter, and new matter [to cross-claim] pursuant to Pa.R.C.P. 1031.1 to [Appellant's] complaint on July 15, 2019. In their new matter, Don Huey alleges that the Goods and Bastian [] are solely liable to [Appellant], liable to Don Huey for contribution and/or indemnity, or jointly and severally liable if liability is found. On August 5, 2019, the Goods filed an answer to Don Huey's July 15, 2019 answer and new matter, which required no responsive pleadings. …

On August 31, 2021, Don Huey filed a motion for judgment on the pleadings … alleging [Appellant's] complaint failed to state a claim for which relief can be granted, and raising the statute of repose[2] as a bar on any action to recover damages. … The [trial] court listed the matter for argument on October 12, 2021. The

---

[2] "Statutes of repose … potentially bar a plaintiff's suit before the cause of action arises, whereas statutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." *McConnaughey v. Building Components, Inc.*, 637 A.2d 1331, 1332 n.1 (Pa. 1994).

- 3 -

Goods filed a response in opposition to Don Huey's motion for judgment on the pleadings on September 17, 2021. The Goods also filed a motion for summary judgment … on September 17, 2021, arguing that [Appellant's] claim is legally and factually unsupported. …

[Appellant] filed a brief in opposition to the Goods' motion for summary judgment on October 13, 2021, arguing that the **Nanty-Glo** Rule[3] applies and precludes summary judgment, and that sufficient facts support a breach of the Goods' duty[, which] should be left to the jury to decide upon. The Goods filed a reply brief in opposition to [Appellant's] motion for summary judgment on October 18, 2021. This reply brief rejected the argument surrounding the **Nanty-Glo** Rule, and argued that [Appellant] failed to meet his burden as the non-moving party by not supplying actual evidence for his claims. On November 8, 2021, Don Huey joined in the Goods' motion for summary judgment.

On October 21, 2021, [Appellant] filed a brief in opposition to Don Huey's motion for judgment on the pleadings, citing the Statute of Repose. [Appellant] later filed a supplemental brief in opposition to the Goods' motion for summary judgment on November 19, 2021, which made the same arguments as [Appellant's] original brief in opposition filed on October 13, 2021. Don Huey and the Goods both filed reply briefs to [Appellant's] supplemental brief in opposition to motion for summary judgment on December 10, 2021, alleging that there are no issues of material fact as to either defendant. Bastian [] has failed to file any pleadings or responses during litigation of the matter.

Argument was heard on the Goods' and Don Huey's joint motion for summary judgment and Don Huey's motion for judgment on the pleadings on January 18, 2022. …

---

[3] The **Nanty-Glo** Rule prohibits entry of summary judgment "where the moving party relies on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." **Lineberger v. Wyeth**, 894 A.2d 141, 149 (Pa. Super. 2006) (emphasis and citations omitted); **Borough of Nanty-Glo v. American Surety Co. of NY**, 163 A. 523 (Pa. 1932).

Trial Court Opinion, 3/3/22, at 2-3 (footnotes added).

In his brief opposing summary judgment, Appellant attached an expert report authored by licensed architect, Robert T. Stephens, Jr., R.A. (Mr. Stephens). *See* Brief in Opposition, 11/19/21, Ex. B. Mr. Stephens opined:

> The [staircase] was constructed and maintained in a manner that created the unsafe condition that led to Ms. Barletta's fall and injury. The [staircase] was improperly constructed and did not comply with the relevant codes and standards for safe stairs. The [staircase] was not properly maintained in accordance with the relevant property maintenance and fire code requirements. The many defects are an indication of the improper design, construction and maintenance of the [staircase].

*Id.*, Ex. B at 8 (break omitted); *see also id.* (enumerating nine instances where the staircase "did not comply with the applicable standards for safe stairs," including that it was excessively steep, had treads that were too narrow, and lacked a continuous handrail). Mr. Stephens formulated the following findings/conclusions "[w]ithin the bounds of reasonable architectural certainty":

> 1. Ms. Barletta's fall and injury was a direct result of the improper stairway within the Goods' residence at 332 Forest Ridge Road. The stairway did not comply with applicable safety standards and was dangerous in a manner that was the cause of her accident.
>
> 2. Bastian [] failed to construct the [stairway] in accordance with the relevant and applicable codes and standards cited.
>
> 3. Don Huey … made modifications to the [stairway] that were not in accordance with the relevant and applicable codes and standards cited.
>
> 4. The Goods failed to inspect or negligently inspected the [stairway] for hazardous conditions. They knew or should have known of the hazardous condition of the [stairway].

- 5 -

5. The Goods failed to correct the hazardous condition of the [stairway]. They permitted the hazardous condition to remain for an unreasonable period of time.

6. The Goods failed to provide any warnings of the potential danger and risk of injury that use of the [stairway] posed.

*Id.* at 12.

By order entered March 3, 2022, the trial court granted the Goods' and Don Huey's joint motion for summary judgment, and dismissed Don Huey's motion for judgment on the pleadings as moot.[4] Appellant filed his petition for finality on April 1, 2022, invoking, *inter alia*, Pa.R.A.P. 341(c), which provides:

> **(c) Determination of finality.--** When more than one claim for relief is presented in an action, … or when multiple parties are involved, the trial court … may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. …

*Id.*; *see also* Petition for Finality, 4/1/22, at ¶ 6.

Appellant claimed an immediate appeal "would facilitate resolution of the entire case." *Id.* at ¶ 9. The trial court agreed. *See* Order, 4/4/22 (finding "immediate appeal would facilitate resolution of the entire case."). The court further stated it was amending the March 3, 2022 order to include

---

[4] Although the caption of the order listed Bastian as an additional defendant, the trial court did not make a ruling as to Bastian. Bastian is not a party to this appeal.

- 6 -

the following language: "As to the [Goods] … and [Don Huey], this Order is a final order pursuant to Pa.R.A.P. 341(c)." *Id.*

Appellant filed a notice of appeal on April 29, 2022. He thereafter complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) concise statement. On May 24, 2022, the trial court entered an order adopting as its Rule 1925(a) opinion the opinion it filed with the March 3, 2022 order.

On June 10, 2022, this Court issued a rule to show cause (RTSC) upon Appellant as to why his appeal is timely. We stated:

> It appears that the March 3, 2022 order may have constituted a final order as the trial court docket suggests that Basti[a]n … [was] never served. Pa.R.A.P. 341(b) (defining final order as one disposing of all claims and all parties); *Hill v. Ofalt*, 85 A.3d 540, 546 n.5 (Pa. Super. 2014) (stating: "everyone whose name appears in the caption of a praecipe for writ of summons is not necessarily a party to the action; parties to an action are those who are named as such in the record and are properly served with process or enter an appearance") (quoting *Liles v. Balmer*, 653 A.2d 1237, 1239 n.1 (Pa. Super. 1994)). Accordingly, Appellant's notice of appeal, filed on April 29, 2022, may be untimely. Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after entry on docket of order from which appeal is taken); Pa.R.A.P. 108(b) (date of entry of order shall be day on which clerk makes notation in docket that notice of entry of order has been given as required by Pa.R.C.P. 236(b)).

RTSC, 6/10/22, at 1-2.

Appellant filed a timely response stating that he was "unclear" about whether the March 3, 2022 order was final and appealable. Response to RTSC, 6/20/22, at 1. Appellant claimed the trial court docket revealed that judgment was not entered in favor of Don Huey and the Goods. *Id.* This Court discharged the RTSC and referred the matter to this panel. Accordingly, we

- 7 -

address the appeal's timeliness. ***See PNC Bank, N.A. v. Unknown Heirs***, 929 A.2d 219, 226 (Pa. Super. 2007) (timeliness of appeal goes to jurisdiction; this Court may not excuse an untimely notice of appeal); ***see also Bailey v. Ras Auto Body***, 85 A.3d 1064, 1068 (Pa. Super. 2014) ("This Court has the power to inquire at any time, *sua sponte*, whether an order is appealable." (citation and brackets omitted)).

The Goods and Don Huey argue Appellant's April 29, 2022, notice of appeal was untimely because he filed it after the 30-day appeal period. ***See*** Goods' Brief at 25-28; Don Huey's Brief at 27-28. The Goods and Don Huey claim the appeal period commenced when the trial court entered the March 3, 2022 order granting summary judgment. ***See id.*** According to the Goods, the March 3, 2022 order is final and appealable where:

> it definitively disposed of all claims brought against the Goods and Don Huey, the only active parties to the litigation. While it is true that the Goods attempted to join Bastian by filing a Praecipe for Writ of Joinder, the docket confirms that Bastian was never successfully served with the Writ of Joinder. In addition, Bastian never entered an appearance; Bastian never filed a responsive pleading to [Appellant's] Complaint; and … Bastian never participated in any respect in the underlying litigation.

Goods' Brief at 27 (record citations omitted).

To the contrary, our review confirms Appellant's claim that after entry of the March 3, 2022 order, there "was no indication that judgment was entered on the trial court docket…." Response to RTSC, 6/10/22, at 1 (some capitalization modified). Generally, an order must be reduced to judgment and docketed before an appeal is proper. ***See*** Pa.R.A.P. 301(a)(1) and (d);

- 8 -

*K.H. v. J.R.*, 826 A.2d 863, 871 (Pa. 2003) ("Under our Appellate Rules, an appeal in a civil case … lies from the entry of judgment.").  The "entry of judgment [is] considered to be a prerequisite to the exercise of this Court's jurisdiction." *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (*en banc*).

Because no judgment was entered, Appellant properly petitioned the trial court to determine finality under Pa.R.A.P. 341(c).  Further, the record confirms the trial court's conclusion that "an immediate appeal would facilitate resolution of the entire case."  Order, 4/4/22; *cf. Bailey*, 85 A.3d at 1070 (quashing appeal as interlocutory and unappealable where trial court failed to consider requirements of Rule 341(c) and improperly found that immediate appeal would "facilitate resolution of this case.").  Accordingly, we address the merits of Appellant's three questions:

> 1. Did the trial court err in finding that Appellant's negligence claim is factually and legally unsupported?
>
> 2. Did the trial court err in finding that Don Huey … does not and did not have a duty to either the Goods or the Decedent, and that the condition of said work which was done, did not cause Decedent to fall?
>
> 3. Did the trial court err in finding that the granting of Summary Judgment did not violate the *Nanty-Glo* Rule?

Appellant's Brief at 5 (reordered for disposition).

Appellant first challenges the trial court's grant of summary judgment in favor of the Goods.  *See id.* at 14-20.  We recognize:

[S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party[,] and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Nicolaou v. Martin*, 195 A.3d 880, 891-92 (Pa. 2018) (some citations omitted); *see also Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (an "abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." (citations omitted)). "Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." *Straw v. Fair*, 187 A.3d 966, 982 (Pa. Super. 2018) (citation omitted).

Appellant argues,

it is uncontested that Decedent was lawfully on the [Goods'] premises as an invitee working as a housekeeper. As such, she was owed a duty by [the Goods], who were in control of the at-issue staircase, the duty of maintaining the premises in a reasonably safe condition[,] and the duty to warn her of any dangerous condition of which they were aware.

Though it is true that there is a lack [of] testimony from Decedent herself, the Appellant has been able to present objective evidence of [the Goods'] negligence bringing harm to Decedent by showing that the at-issue staircase was constructed and

- 10 -

maintained in various ways which violated several residential codes.

Appellant's Brief at 16-17 (citations omitted); *see also id.* at 17-19 (extensively citing Mr. Stephens' report, claiming it "support[s] his opinion that the at-issue staircase was defective" and "creates multiple genuine issues of material fact.").

The Goods counter that the trial court properly granted summary judgment because Appellant's negligence claim lacks legal and factual support. *See* Goods' Brief at 12-21. The Goods emphasize that Ms. Barletta "was not deposed prior to her death, but even if she had been, it was always clear that she would not have been able to describe how or why the fall occurred, as she had no recollection of it." *Id.* at 13; *see also id.* at 13-15 (detailing deposition testimony about Decedent's lack of memory from Appellant, Carrie Semsick (Appellant's wife), Mrs. Good, and Roseanne Grettler (who also employed Ms. Barletta as a housekeeper). According to the Goods, "Ms. Barletta went up and down the stairs countless times over a period of ten (10) or more years and never once tripped, slipped, or fell down the stairs until the day of the incident." *Id.* at 17 (underline in original).

The Goods argue that in the alternative, even if the staircase "somehow presented a dangerous condition, they still could not be liable because the condition of the staircase was open and obvious – especially to Ms. Barletta." *Id.* at 18; *see also id.* at 18-19 (detailing deposition testimony of Appellant and Carrie Semsick that Ms. Barletta previously complained that the staircase

was narrow and awkward). Finally, the Goods claim Mr. Stevens' expert report does not alter the disposition. *Id.* at 20-21 (arguing Mr. Stevens improperly relied on residential building codes created after the Goods purchased their home; the evidence established the Goods had no involvement in construction of the staircase; and the Goods "relied on … contractors [] to properly and safely construct the home in the first instance and to make proper and safe modifications thereafter.").

The Pennsylvania Supreme Court has explained:

The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff. In a typical injury case, the plaintiff must prove all of the following elements of negligence: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred.

*Grove v. Port Auth.*, 218 A.3d 877, 888-89 (Pa. 2019) (citations and quotation marks omitted).

This Court has explained:

Pennsylvania courts long have recognized that a land owner owes a duty to business invitees to keep premises safe. *See Kulka v. Nemirovsky*, 170 A. 261, 262 (Pa. 1934). "The standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespassor, licensee, or invitee." *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983). In *Carrender*, our Supreme Court explained:

Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement (Second) of Torts, §§ 341A, 343 & 343A. With respect to conditions on the

land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement, *supra*, § 343. Thus, as is made clear by section 343A of the Restatement,

> a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement, *supra*, § 343A.

*Id*. For a danger to be "known," it must "not only be known to exist, but … also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." *Id*. at 124 (quoting Restatement (Second) of Torts, § 343A, comment b).

More recently, this Court reiterated that "the duty owed to a business invitee is the highest owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. 2006) (citation omitted).

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84-85 (Pa. Super.

2015) (*en banc*) (some formatting modified).

The trial court detailed its rejection of Appellant's argument:

> The facts relating to the accident are not in dispute. As previously stated above, **Ms. Barletta passed away from an unrelated medical issue and she was not deposed before her death** on December 17, 2018. However, even if Ms. Barletta was deposed, the evidence supports a finding that she would have been unable to recall the fall. Specifically, when [Ms. Barletta] spoke with the Goods and [Appellant], she had no recollection of the fall. In his deposition, [Appellant] testified that Ms. Barletta's recounting of the fall was identical to that of [Mrs.] Good. ***See*** [Appellant's] Depo., [9/20/19,] p. 82-83. Additionally, [Appellant] testified that he was unsure of whether Ms. Barletta was ascending or descending on the stairs, as well as a lack of knowledge of a handrail being present. ***Id.*** at p. 97-98. [Appellant] also testified that Ms. Barletta "did not remember the incident." ***Id.*** at p. 92. Carrie Semsick, [Appellant's] wife, also testified that Ms. Barletta could not remember the fall, and that her knowledge of the incident came from what other[]s told her about the fall. ***See*** Carrie Semsick Depo., [11/21/19,] p. 28-29. Roseanne Grettler, a friend of the Goods [and employer of Ms. Barletta], also stated that Ms. Barletta was unable to remember the fall. ***See*** Roseanne Grettler Depo., [10/15/20,] p. 42-44.
>
> As such, the only evidence/testimony as to the fall is from [Mrs.] Good, who witnessed the fall. [Mrs.] Good testified to the following in her deposition:
>
> > A: We were chatting, [Ms. Barletta's] hand was on the handrail, and she was looking up at me as we were talking.
> >
> > Q: Over her shoulder?
> >
> > A: Correct. And then she fell down the stairs.
> >
> > Q: Did she trip?
> >
> > A: I couldn't see her feet clearly. I could see her upper body and her hand on the handrail as she turned talking to me. I wasn't looking at her feet. I don't know whether she just missed a step, I'm not sure.
>
> [] Paula Good Depo., [5/26/21,] p. 42.

After the fall, Ms. Barletta was unable to explain what happened or how she fell. **Id.** at p. 46, 52.

* * *

[Appellant] … points to [Mr. Stevens'] expert report [that Appellant] submitted with [his] supplemental brief in opposition to the motion for summary judgment. While the applicability of the expert report is in dispute, as it cites to the building codes that were implemented and/or adopted by White Township (the Township where the Goods' home is located) well after the home was built, this court will assume for the sake of argument that the [staircase was] not built in compliance with code. To be successful in this case, [Appellant] would have to prove or have some evidence that the failure to build the [staircase] to code created an unreasonable risk of harm, and that the Goods knew of this issue or in the exercise of reasonable care should have known of the condition. Otherwise stated, there needs to be evidence to support a finding that the Goods had a "hand" in creating the issue or had actual or constructive notice of the alleged unreasonably dangerous stairs.

What amounts to notice or constructive notice of a defect or dangerous condition existing upon a defendant's premises varies under the conditions of each case. Among the factors affecting the question are the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it. **See Bremer v. W. W. Smith**, … 191 A. 395[, 397 (Pa. Super. 1937)]. [The Goods'] home was built in 1996, and was not purchased by the Goods until 1998. **The Goods had no "hand" in building the stairs.** The Goods did not design the stairs, did not request their construction, and did not control their construction. In fact, with the exception of the change to the entry at the top of the stairs from a right opening to a left opening made shortly after the Goods purchased the home, and the re-carpeting of the stairs, **there is no evidence that the Goods ever made, directed or requested any change to the stairs**. **See** Paula Good Depo., [5/26/21,] p. 14, ln. 23. The [staircase was] original to the home when [the Goods] purchased it and they never made any changes to the stair treads, or risers. [**Id.** at] p. 18, ln. 21-25. Additionally, the uncontroverted testimony of the only witness to

the fall was that Ms. Barletta was on a stair beyond the landing (beyond the area that Don Huey had modified) when she fell. The stairs are utilized numerous times daily by the Goods. No one had ever fallen down the stairs or complained of the stairs. Finally, **Ms. Barletta had worked at the home in excess of ten (10) years. While performing her work in the home**, she would work throughout the home, including the second floor, office, and master bedroom and **she "always" utilized the [staircase]** at issue. The Goods never had a reason to measure the rise or run of the stairs. [*Id.* at] p. 61. The Goods have no specialized expertise in home design or construction, [and] no one ever informed them that there were any safety issues with the stairs. The Goods were not aware of any issues with Ms. Barletta's health that made her ability to utilize the staircase a concern.

This court finds that [Appellant's] claim is factually and legally unsupported. This court finds that **even if the staircase is unreasonably dangerous, the Goods did not know and even through exercise of reasonable care should they have known of the alleged dangerous condition**. To the Goods, the staircase was exactly that, a staircase in their home that provided access from the first floor to the second floor; the same staircase that was there the day they purchased the home, the same staircase that for the past twenty (20) plus years they have utilized numerous times on a daily basis without incident, and most importantly, the same stairs that Ms. Barletta utilized every Wednesday for in excess of ten (10) years. At a minimum, Ms. Barletta had spent five hundred and twenty (520) days and over three thousand one hundred and twenty (3,120) hours in the Goods' home. **Each day she was in the home she utilized the staircase several times.**

**The nature and condition of the stairs was and is open and obvious. Most importantly, it was open and obvious to Ms. Barletta. This is supported by the testimony of** [**Appellant**, who] testified that Ms. Barletta had specifically complained to him that the staircase was "narrow" or "awkward." [Appellant's] impression was that [Ms. Barletta] was "leery" of some of the steps and took appropriate precautions. This discussion had taken place on at least two (2) or three (3) occasions, with the first being five (5) years before [Ms. Barletta's] fall. [Carrie] Semsick testified that Ms. Barletta had described the staircase as narrow and that certain steps did not fully accommodate an adult's feet. If the court accepts this testimony

as true, it is clear that Ms. Barletta appreciated the condition of the [staircase]. However, none of these facts were relayed to the Goods, and as discussed above, the Goods had no notice of the alleged defective condition of the stairs. The evidence supports the finding that to the extent the [staircase was] dangerous, Ms. Barletta appreciated the condition of the stairs. **The mere happening of an accident does not charge a defendant with liability**; it is for the plaintiff to prove some specific default, or, at least, an inference of negligence as an indispensable basis of recovery. ***Hartigan v. Clark***, 165 A.2d 647[, 653] (Pa. 1960).

Trial Court Opinion, 3/3/22, at 6-10 (emphasis added). Our review discloses that the trial court's reasoning is supported by the law and the record. Thus, Appellant's first issue does not merit relief. ***See id.***

Appellant next challenges the entry of summary judgment in favor of Don Huey, claiming the trial court erred in concluding Don Huey did not breach any duty to Ms. Barletta and/or the Goods. ***See*** Appellant's Brief at 25-30. Appellant relies on Mr. Stephens' report, claiming it "evidences a remodeling of the staircase by [] Don Huey which was not in accordance with the recognized standards and was negligently constructed." ***Id.*** at 27-28; ***see also id.*** at 26-27 (describing Don Huey's construction work performed on the entryway to the staircase). Appellant contends "the breach of Don Huey's duty was a proximate cause in Decedent's fall down the staircase." ***Id.*** at 28.

However, Don Huey argues:

[B]ecause [D]ecedent … died before she could testify, there is simply no way for [Appellant] to establish how the [D]ecedent fell. Without this fact in the record, [Appellant] cannot establish a duty or breach of duty on behalf of [] Don Huey.

Don Huey's Brief at 8; **see also id.** (stating Appellant's complaint "offers no description of how or what caused [Decedent] to fall, other than generally asserting that the [staircase was] 'defective.'" (citing Complaint, 3/26/19, at ¶¶ 21-24)). Don Huey claims "Mr. Stevens' report cannot … establish what caused the [D]ecedent to fall because the lack of testimony from Ms. Barletta describing her fall leaves Mr. Stevens without a basis to do so." **Id.** at 10. Don Huey emphasizes that in Appellant's "verified discovery responses, [Appellant] admits that [Ms. Barletta] does not recall how the accident happened." **Id.** at 9 (citing Appellant's Answers to the Goods' Interrogatories, 7/19/19, at 1). Finally, Don Huey asserts that Ms. Barletta's fall "occurred on a step beyond the landing, meaning Ms. Barletta fell in an area outside of where Don Huey performed its work." **Id.** at 10 (citing Paula Good Depo., 5/26/21, at 41).

The trial court detailed its rationale for entering summary judgment in favor of Don Huey as follows:

> "It is a fundamental principle of tort law [that] there cannot be a valid claim sounding in negligence unless there is a duty upon the defendant in favor of the plaintiff which has been breached." **Alumni Ass'n v. Sullivan**, 572 A.2d 1209[, 1210-11] (Pa. 1990). The assessment of whether a duty exists is, in the first instance, a matter for the [c]ourt. **See Straw** …, 187 A.3d [at 983]…. The Pennsylvania Supreme Court has held that Sections 323 and 324A of the Second Restatement of Torts correctly state the law of this Commonwealth. **Id.** Section 323 imposes liability where a party assumes a duty, whether gratuitously or for consideration, and so negligently performs that duty that another suffers damage. **Feld v. Merriam**, 485 A.2d 742[, 746] (Pa. 1984). Section 324 parallels Section 323[;] however[, Section 324] deals with liability to third persons. Specifically, Section 324 imposes liability if the

- 18 -

failure to exercise reasonable care increases the risk of harm to a third person, or if the duty undertaken was owed by another to the third person, or the harm is suffered because of reliance of the other or the third person upon the undertaking.

In the case before the [c]ourt, the facts are not in dispute. **Don Huey did not design or build the [Goods'] home. Don Huey had no part in the modification of the [staircase]** and was never asked to modify the [staircase]. Don Huey was hired to change the entry way at the top of the [staircase] from a right entry to a left entry. There is no evidence to support that [Don Huey] was requested to modify or that [Don Huey] did modify any steps on the staircase. There is no evidence that [Don Huey] was requested or consulted as to the nature and layout of the staircase. In fact, the only testimony relating to the fall of Ms. Barletta[] indicates that **she had passed the entry way (the area modified by Don Huey) and was on the third step before she fell.**

**Any duty of Don Huey is limited to the area where Don Huey performed work in reconfiguring the entry way.** However, that is not the area where Ms. Barletta was when she fell. This [c]ourt finds that Don Huey does not, and did not have a duty to either the Goods or Ms. Barletta. To find otherwise would impose liability on every contractor that provides some maintenance work in a home, to inspect and report on a multitude of potential issues. Based on the facts of this case, this court finds that Don Huey did not have a duty to either the Goods or Ms. Barletta as to the design and layout of the stairs where Ms. Barletta fell. Don Huey's duty is limited to the work that was performed, and there is simply no factual evidence to support the position that the condition of said work caused Ms. Barletta to fall.

Trial Court Opinion, 3/3/22, at 11-12 (emphasis added; some citation modification). Again, the record and law support the trial court's reasoning. Appellant's second issue does not warrant relief. ***See id.***

In his final issue, Appellant claims the trial court erred in failing to find that summary judgment in favor of the Goods and Don Huey violated the ***Nanty-Glo*** Rule, where the defendants relied solely on the testimony of Mrs.

- 19 -

Good to establish the non-existence of an issue of material fact. *See* Appellant's Brief 20-25. This Court has instructed that three factors determine the applicability of the *Nanty-Glo* Rule:

> Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the [fact-finder] by resolving any material issues of fact. It is only when the third stage is reached that *Nanty-Glo* comes into play.

*DeArmitt v. N.Y. Life Ins. Co.*, 73 A.3d 578, 594-95 (Pa. Super. 2013) (citation omitted). For the *Nanty-Glo* Rule to apply, the trial court must have improperly resolved a genuine discrepancy or dispute as to a material fact. *See id.*

Appellant claims he "has fulfilled the first two steps in the *Nanty-Glo* analysis." Appellant's Brief at 22. He contends he also met the third "step," because the Goods and Don Huey "rely solely upon their own witnesses' testimony, that of Appellee [Mrs.] Good, to erroneously try and establish the lack of a genuine issue of material fact…." *Id.* Finally, Appellant complains the entry of summary judgment "den[ies] the factfinder the opportunity to evaluate the credibility of [Mrs.] Good as a witness." *Id.* at 24.

Don Huey argues otherwise:

> While Mrs. Good was the only witness to the accident in question, hers was not the only testimony relied upon in support of [the respective] motions for summary judgment, nor was it the only testimony relied upon by the trial court in reaching its decision. …

Don Huey's Brief at 20 (some capitalization modified). Don Huey claims summary judgment was supported by **admissions** by Appellant and his witnesses. *Id.* at 21 (asserting Appellant "testified [in his deposition] that when he spoke with Ms. Barletta[,] she had no recollection of the fall, but what she could recall was identical to Mrs. Good's account." (citing Appellant's Depo., 9/20/19, at 70, 82-83), and *id.* at 23 (claiming "Appellant's witnesses simply affirmed that Decedent could not remember her fall and did not speak further about the events of the incident aside from vague and unreliable recollections")); *cf.* Appellant's Brief at 23 (arguing "no testimony made by Appellant[] or his witnesses suggests that any of Appellant['s] admissions would legally or factually support" summary judgment). Don Huey references ***Porterfield v. Trustees of Hosp. of Univ. of Pennsylvania***, 657 A.2d 1293, 1295 (Pa. Super. 1995), where this Court held that an exception to the ***Nanty-Glo*** Rule "exists where the moving party supports the motion by using the admissions of the opposing party or the opposing party's own witnesses." Don Huey's Brief at 21. Finally, Don Huey complains "a representative of [] Don Huey was never deposed while this action was pending." *Id.* at 22.

The Goods' argument regarding the ***Nanty-Glo*** Rule comports with Don Huey's argument. ***See generally*** Goods' Brief at 21-24.

The trial court likewise opined:

Under the ***Nanty-Glo*** Rule …, the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact. This court finds that

- 21 -

the decision in this case does not violate the ***Nanty-Glo*** Rule, as it does not rely solely on the … witnesses [of the Goods and Don Huey,] and it is consistent with the testimony of [Appellant's] witnesses. ***See*** … ***Porterfield*** …, 657 A.2d 1293[.]

Trial Court Opinion, 3/3/22, at 10-11; ***see also id.*** at 6-7, ***supra*** (noting Appellant, Carrie Semsick, and Roseanne Grettler testified in their depositions that Decedent did not remember the fall).

Our review confirms there was no violation of the ***Nanty-Glo*** Rule. Conversely, the admissions of Appellant and his witnesses support the trial court's entry of summary judgment. ***See id.*** at 10-11.

For the above reasons, we discern no error and affirm summary judgment against Appellant and in favor of the Goods and Don Huey.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2023